Katherine **PIVEN**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**SYKES ENTERPRISES, INC.,** John L. Sykes, Scott J. Bendert, and David Grimes, Defendants.

No. 8:00–CV–212–T26–F.

United States District Court, M.D. Florida, Tampa Division.

Sept. 14, 2000.

Jeffrey C. Block, Michael Lange, Berman, DeValerio & Pease, Boston, MA, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Michael J. Pucillo, Wendy H. Zoberman, Burt & Pucillo, LLP, West Palm Beach, FL, Kenneth G. Gilman, David Pastor, Gilman and Pastor, LLP, Saugus, MA, for Katherine Piven, Non-lead plaintiff on behalf of herself and all others similarly situated, plaintiffs.

Marc A. Topaz, Schiffrin & Barroway, LLC, Bala Cynwyd, PA, Michael J. Pucillo, Burt & Pucillo, LLP, West Palm Beach, FL, for James V. Biglan.

Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Kenneth Vianale, Maya Saxena, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, for Pond Equities.

Andrew N. Friedman, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Seattle, WA, Scott R. Shepherd, Shepherd & Geller, LLC, Boca Raton, FL, Paul J. Geller, Cauley, Geller, Bowman & Coates, LLP, Boca Raton, FL, for Richard W. Miller.

Mark C. Gardy, Karin E. Fisch, Nicholas H. Gilbo, Abbey, Gardy & Squitieri, LLP, New York City, Jonathan L. Alpert, Alpert & Ferrentino, P.A., Tampa, FL, for Charles J. Piven and Benjamin Piven.

Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Maya Saxena, Kenneth J. Vianalle, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, Jeffrey R. Krinsk, Howard Finkelstein, Finkelstein & Krinsk, San Diego, CA, for Ken Northcross.

Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Michael Donovan, Donovan & Miller, LLC, Philadelphia, PA, for Kevin Feller.

Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, David C. Harrison, Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, NY, Peter Lagorio, Gilman and Pastor, Boston, MA, for Clair A. Cardina.

Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Michael J. Pucillo, Wendy H. Zoberman, Burt & Pucillo, LLP, West Palm Beach, FL, Allyn Zissel Lite, Joseph J. DePalma, Lite, DePalma, Greenberg & Rivas, LLC, Newark, NJ, for David Ehrenfeld.

Jeffrey C. Block, Michael Lange, Berman, DeValerio & Pease, Boston, MA, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Marc I. Gross, Murielle J. Steven Walsh, Pomerantz, Haudek, Block, Grossman & Gross, LLP, New York City, Andrew Schatz, Schatz & Nobel, P.C., Hartford, CT, for Linda Decker.

Sherrie R. Savett, Stuart J. Guber, Berger & Montague, P.C., Philadelphia, PA, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Michael J. Pucillo, Wendy H. Zoberman, Burt & Pucillo, LLP, West Palm Beach, FL, Stephen Levy, Levy & Levy, New York City, for Thomas Kalkowski.

Brian Murray, Rabin & Peckel, LLP, New York City, Leo W. Desmond, Law Office of Leo W. Desmond, West Palm Beach, FL, for John F. Wilkes.

Fred T. Isquith, Shane T. Rowley, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Leo W. Desmond, Law Office of Leo W. Desmond, West Palm Beach, FL, for James Jacobs.

Steven B. Singer, Gerald H. Silk, Douglas M. McKeige, Berstein, Litowitz, Berger & Grossmann, New York City, Michael C. Addison, Law Office of Michael C. Addison, Tampa, FL, Michael J. Pucillo, Wendy H. Zoberman, Burt & Pucillo, LLP, West Palm Beach, FL, Horace Schow, II, Florida State Board of Administration, Office of the General Counsel, Tallahassee, FL, for Florida State Board of Administration and Louisiana State Employees' Retirement System.

Lawrence D. Levit, Robert M. Kornreich, Wolf Popper LLP, New York City, Michael J. Pucillo, C. Oliver Burt, III, Burt & Pucillo, LLP, West Palm Beach, FL, for James J. McGrath.

Jules Brody, Aaron Brody, Stull, Stull & Brody, New York City, Joseph H. Weiss,

Weiss & Yourman, New York City, for Howard Lasker.

Harvey Greenfield, Laura Perrone, Law Firm of Harvey Greenfield, New York City, for Jerry Krim.

Frederick Stewart Schrils, Holland & Knight, LLP, Tampa, FL, Robert R. Feagin, III, Tracy A. Nichols, Mitchell E. Herr, Tiffani G. Lee, Haolland & Knight, LLP, Miami, FL, Jason Brown, Holland & Knight, LLP, New York City, for Defendants.

### *ORDER*

LAZZARA, District Judge.

**UPON DUE CONSIDERATION**, and after an independent examination of the relevant submissions, it is **ORDERED AND ADJUDGED** as follows:

1) The Report and Recommendation of Magistrate Judge Mary S. Scriven (Dkt.50) is confirmed and approved in all respects and made a part of this order for all purposes.[1]

2) The Motion of the Florida State Board of Administration and the Louisiana State Employees' Retirement System for Appointment as Co–Lead Plaintiffs and for Approval of its Choice of Counsel (Dkt.13) is granted.

3) The Florida State Board of Administration and the Louisiana State Employees' Retirement System are appointed and designated as co-lead Plaintiffs in this case.

4) The law firms of Burt & Pucillo, LLP, and Bernstein Litowitz Berger & Grossman, LLP, are approved as co-lead counsel for the Plaintiffs, and the law office of Michael C. Addison is approved as Plaintiffs' liaison counsel.

---

1. The Court notes that none of the parties have filed objections to the Report and Recommendation, and the time for filing such objections has expired.

5) The Motion to Appoint Lead Plaintiffs and Appoint Their Selection of Counsel (Dkt.17) filed by Sawgrass Asset Management, L.L.C., and Westwind Co. are denied.

6) The Motion for Leave to Conduct Discovery (Dkt.23) is denied as moot.

7) The co-lead Plaintiffs shall have 30 days from the date of the entry of this order within which to file an amended and consolidated class action complaint.

8) The Defendants shall have 45 days from the date of service of the amended and consolidated class action complaint within which to respond to same.

## *REPORT AND RECOMMENDATION*

SCRIVEN, United States Magistrate Judge.

THIS CAUSE comes before the Court on the following motions: (1) Motion of the Florida State Board of Administration ("FSBA") and the Louisiana State Employees' Retirement System ("LASERS") for Appointment as Co–Lead Plaintiffs and for Approval of its Choice of Counsel pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (Dkt.13); (2) Sawgrass Asset Management, L.L.C. ("Sawgrass") and Westwind & Co.'s ("Westwind") Motion to Appoint Lead Plaintiffs and Appoint their Selection of Counsel (Dkt.17); and (3) Motion of LASERS and FSBA for Leave to Conduct Discovery (Dkt.23).[1]

### A. BACKGROUND

Plaintiffs bring this securities fraud class action after sustaining losses from the purchase of Sykes Enterprises Incorporated ("Sykes") common stock. At least fourteen related securities class action suits have been filed in this District concerning Sykes' publicly traded securities. These cases have been consolidated into the present case, case number 8:00–cv–212–T–26F.

The security class actions suits arise from virtually identical underlying facts and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. Each of the consolidated cases share essentially the same allegations. Namely, that Plaintiffs incurred losses during the class period[2] from their purchase of Sykes' common stock as a result of Defendants' violation of federal securities law. Plaintiffs allege that "during the class period, Defendants issued to the investing public false and misleading financial statements and press releases concerning Sykes' publicly reported revenues and earnings." Complaint, Dkt. 1, at 1.

Specifically, Plaintiffs allege that on April 26, 1999, July 26, 1999, and October 25, 1999, Sykes issued press releases reporting its first, second and third quarter results, respectively. *See* Complaint, Dkt. 1, at ¶¶ 25–30. Each of the press releases indicated an increase in revenues from the respective period in 1998, as well as an increase in earnings per share. *Id.*

Sykes announced on January 25, 2000, however, that its fourth quarter results from the period ending December 31, 1999 would not be as high as originally anticipated. *Id.* at ¶ 31. Subsequently, Sykes announced on February 1, 2000 a delay in the release of the fourth quarter results

---

1. The District Court has referred these motions to the Undersigned for consideration and a Report and Recommendation. *See* Local Rules 6.01(b) and 6.01(c), M.D. Fla.

2. The Undersigned notes that of the fourteen consolidated cases, there are four different proposed class periods: (1) April 26, 1999—January 31, 2000; (2) October 25, 1999—January 31, 2000; (3) July 26, 1999—February 4, 2000; and (4) July 26, 1999—February 6, 2000. The exact class period will be resolved when the District Court certifies the class.

and the year-end financial results. *Id.* at ¶ 32. After this announcement, the value of the stock plunged. On February 1, 2000 alone, the stock decreased in value 37%, from $27–11/16 to $17–5/8. *Id.* at ¶ 4. Sykes eventually restated its second and third quarter financial results in a press release on February 7, 2000, which indicated that the previously reported results were misleading. Dkt. 17 at 8. By February 17, 2000, the stock closed at $14–1/4. *Id.*

Plaintiffs now assert that Defendants' misstatements were in violation of federal securities laws. Specifically, Plaintiffs allege that the Defendants disseminated false and misleading statements through the press releases and Forms 10–Q filed with the SEC, resulting in the Plaintiffs' eventual financial losses from the purchase of Sykes' common stock.

## B. PROCEDURAL HISTORY

Katherine Piven filed the present class action on behalf of herself and all others similarly situated on February 1, 2000. As previously stated, thirteen other private securities fraud class actions have been consolidated with the present action. *See* Dkts. 4, 5, 9, 10, 12, and 30. The proposed class, as defined by Piven's Complaint, consists of "herself and all other persons who purchased the common stock of Sykes on the open market during the period April 26, 1999 through and including January 31, 2000 (the 'class period')." Dkt. 1, ¶ 1. As required by 15 U.S.C. § 78u–4(a)(3)(A)(i), the statutory notice was published on a national wire service announcing the filing of the Complaint in this case and notifying members of the purported class of their right to move for appointment as lead plaintiff. *See* Dkt. 15, Ex. D. Two such groups have now moved for appointment as lead plaintiff in this action.

The first group moving for appointment as co-lead plaintiffs consists of Florida State Board of Administration (FSBA) and the Louisiana State Employees' Retirement System (LASERS), two institutional investors that manage pension funds for the governmental employees of the states of Florida and Louisiana, respectively. Additionally, a group comprised of 168 other persons and corporate entities also moved to appoint Sawgrass and Westwind as lead plaintiffs. The group, however, withdrew Sawgrass from consideration as lead plaintiff on June 1, 2000 (Dkt.41).

## C. UNDISPUTED FACTS

LASERS purchased and sold the following shares of Sykes' common stock on the following dates:

| Date | Purchases | Purchase Price | Date of Sale | Sale Price | Losses in $ |
|---|---|---|---|---|---|
| 05/20/1999 | 12,900.00 | $ 30.43 | 02/01/2000 | $18.35 | 155,896.50 |
| 05/21/1999 | 2,800.00 | $ 31.60 | 02/01/2000 | $18.35 | 37,102.80 |
| 05/24/1999 | 4,700.00 | $ 32.44 | 02/01/2000 | $18.35 | 66,237.10 |
| 06/04/1999 | 4,600.00 | $ 32.94 | 02/01/2000 | $18.35 | 67,109.40 |
| 06/04/1999 | 1,100.00 | $ 32.94 | 02/07/2000 | $14.28 | 20,519.62 |
| 06/09/1999 | 10,500.00 | $ 30.34 | 02/07/2000 | $14.28 | 168,632.10 |
| 06/29/1999 | 1,500.00 | $ 31.55 | 02/07/2000 | $14.28 | 25,900.80 |
| 07/01/1999 | 3,200.00 | $ 32.38 | 02/07/2000 | $14.28 | 57,895.04 |
| 08/12/1999 | 5,000.00 | $ 26.00 | 02/07/2000 | $14.28 | 58,586.00 |
| 10/26/1999 | 200.00 | $ 26.98 | 02/07/2000 | $14.28 | 2,540.04 |
| 10/26/1999 | 6,500.00 | $ 26.98 | 02/15/2000 | $14.68 | 79,966.25 |
| 01/27/2000 | 12,600.00 | $ 27.76 | 02/15/2000 | $14.68 | 164,757.60 |
| 01/28/2000 | 4,300.00 | $ 27.87 | 02/15/2000 | $14.68 | 56,714.85 |
| TOTALS | 69,900.00 | | | | $ 961,858.10 |

*See* Dkt. 15, Ex. A. LASERS thus allegedly suffered losses of $961,858.10 associated with its purchase of Sykes' common stock.

FSBA purchased the following shares of stock, which it held through the class period:

| Date | Purchases | Purchase Price | Cost |
|------|-----------|----------------|------|
| 07/09/1999 | 20,200.00 | $ 31.4214 | $ 634,712.28 |
| 07/13/1999 | 30,000.00 | $ 31.3125 | $ 939,375.00 |
| 10/26/1999 | 5,400.00 | $ 26.5035 | $ 143,118.90 |
| TOTAL | 55,600.00 | | $1,717,206.18 |

*See* Dkt. 15, Ex. B. FSBA alleges that it lost approximately $821,768.18 by its purchase of Sykes' common stock. *Id.* During the purported class period of April 26, 1999 through January 31, 2000, FSBA and LASERS therefore purchased a combined total of 125,500 shares of Sykes' common stock, and allege combined total losses of approximately $1,783,626.28.

Westwind purchased and sold the following shares of Sykes' common stock:

| Date | Purchases | Purchase Price | Purchase Amount |
|------|-----------|----------------|-----------------|
| 12/01/1999 | 54,900.00 | $40.5000 | $198,450.00 |
| 12/01/1999 | 27,900.00 | $25.9646 | $724,412.34 |
| 12/07/1999 | 13,000.00 | $42.4610 | $551,993.00 |
| 12/13/1999 | 5,700.00 | $48.6250 | $277,162.50 |

| Date | Shares | Sale Price | Amount Sold |
|------|--------|------------|-------------|
| 01/14/2000 | 5,400.00 | $48.1302 | $259,903.08 |

TOTAL SHARES HELD: 46,100

Total Purchase Amount: $1,752.017.84

*See* Dkt. 18, Ex. A, p. 12–13. Westwind thus purchased a total of 46,100 shares during the class period, excluding those which were sold before the price of the stock decreased. Westwind alleges its losses from the purchase of the stock to be approximately $730,404.46.

## D. DISCUSSION

### a) *The Private Securities Litigation Reform Act*

These motions are governed by the Securities Exchange Act of 1934, § 21D(a) ("the Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(a), and Fed.R.Civ.P. 23. The PSLRA was enacted to remedy perceived abuses in the class action procedure in securities fraud actions. *See Burke v. Ruttenberg*, 102 F.Supp.2d 1280, 1303–09 (N.D.Ala.2000) (discussing the problems with securities class actions resulting in the enactment of the PSLRA).

The PSLRA provides that in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure," 15 U.S.C. § 78u–4(a)(1), the court shall appoint a lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i). The lead plaintiff shall be that "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members ('the most adequate plaintiff')." *Id.* The Court shall consider any timely motion for appointment as lead plaintiff by any member of the purported class. *Id.*

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is that person who "has either filed the complaint or made a motion in response to a notice," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa), "has the largest financial interest in the relief sought," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb), and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Any member of the purported plaintiff class may rebut the presumption upon proof that the presumptive most adequate plaintiff "is subject to unique defenses," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(bb), or "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

Discovery may be had on the issue of the adequacy of the presumed lead plaintiff only upon a showing of a reasonable

basis for a finding that the presumptively most adequate plaintiff cannot adequately represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(iv). Subject to approval from the court, the most adequate plaintiff may select and retain counsel to represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(v). Furthermore, in an effort to prevent "professional plaintiffs," the PSLRA precludes a person from representing the class as a lead plaintiff in more than five securities class actions during any three year period, except as otherwise permitted by the court. 15 U.S.C. § 78u–4(a)(3)(B)(vi).

### b) Designation of Lead Plaintiff

 Whether a lead plaintiff will fairly and adequately represent the interests of the class is a question of fact for the district court. *Ehlert v. Singer,* 185 F.R.D. 674, 677–78 (M.D.Fla.1999) (citation omitted). "The determination of fair and adequate representation rests on two bases: (1) common interests between a representative and the class and, (2) a willingness and ability to vigorously prosecute the action." *Id.* at 678. Furthermore, a lead plaintiff must not have any interests antagonistic to other class members. *Id.* "Most importantly, the purported representative 'must demonstrate that she will vigorously prosecute the action by providing both adequate financing and competent counsel.'" *Id.* (citations omitted).

### i) Procedure Required by PSLRA

The plaintiff who files the initial action must publish notice to the class within 20 days of filing the action to inform class members of their right to file a motion for appointment as lead plaintiff within sixty days of the notice. 15 U.S.C. § 78u–4(a)(3)(A)(i). Such notice in this case was

published on February 1, 2000 on the *PR Newswire.* *See* Dkt. 15, Ex. D, Notice dated Feb. 1, 2000. FSBA/LASERS and Westwind's motions for appointment as lead plaintiff were both filed on April 3, 2000, the sixtieth day subsequent to the publishing of this notice, and are therefore both timely.

### ii) Largest Financial Interest

The PSLRA contains a rebuttable presumption that the most adequate lead plaintiff is that with the largest financial interest. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

During the class period from April 26, 1999 through January 31, 2000, FSBA and LASERS together purchased a total of 125,500 shares of stock, compared to 46,100 purchased by Westwind. FSBA and LASERS together allege losses of $1,783,627.28, to Westwind's alleged losses of $730,404.46. At first glance, it thus appears that movants FSBA and LASERS are the most adequate plaintiffs based upon their larger financial interest.

Westwind argues, however, that it has the largest financial interest in this case since the losses alleged by FSBA and LASERS are based upon an improperly defined class period extending back to April 26, 1999. Westwind argues that the class period should begin on July 26, 1999, the day that Sykes reported its erroneous second quarter results.[3] Using July 26, 1999 as the date of commencement of the class period, Westwind argues that FSBA and LASERS only suffered $418,716.64 in losses ($56,151.90 attributable to FSBA and $362,564.74 attributable to LASERS), and therefore would not have the largest financial interest. This would be compared to

---

**3.** Not surprisingly, the Defendants join in this proposed limitation of the class period. *See* Dkt. 45. *See also* Order dated August 24, 2000, striking Defendants' Response to the Notice of Sawgrass Asset Management, L.L.C. to Withdraw its Application to be Appointed Lead Plaintiff.

Westwind's losses of $730,404.46, since all of its losses occurred in the proposed "shortened" class period.

■ This argument lacks merit for several reasons. First, Westwind's counsel, the law firm of Bernstein, Liebhard & Lifshitz, L.L.P., also referred to the loss period as April 26, 1999 to January 31, 2000 in a press release and moved to appoint Westwind and Sawgrass as co-lead plaintiffs based upon that same time period. *See* Dkt. 28, Ex. C. Secondly, the class period is defined as that period in the notice published for the first action filed. *See In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d 803, 818 (N.D.Ohio 1999) (finding that movants for lead plaintiff limited to financial losses claimed in motions filed in the 60 day period).

Most significantly, the District Court has not defined the applicable class period at this preliminary stage in the litigation. The Undersigned will therefore apply the class period as defined in the Complaint now before the Court, as those dates were used in the published announcement notifying class members of this litigation and used by the movants in filing their motions for appointment as lead plaintiff. Any limitation of the class period at this stage in the litigation would be improper, as there is no such motion pending before the Court, the issue has not been adequately briefed, and would in effect be tantamount to entry of partial summary judgment limiting damages that may be sought in this case.

The Undersigned notes that if the District Court restricts or otherwise modifies the class period at the class certification stage, the issue of lead plaintiff may be revisited. *See Ehlert v. Singer,* 185 F.R.D. 674, 679 (M.D.Fla.1999); *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60–61 (D.Mass.1996) ("[T]his court also concludes that its determination to appoint a person or persons as lead plaintiff must be with-

out prejudice to the possibility of revisiting that issue in considering a motion for class certification.").

Accepting April 26, 1999 as the date of commencement of the class period, the Undersigned thus finds that FSBA and LASERS are presumptively the lead plaintiffs, as they have the larger financial interests in this case.

### iii) Co–Lead Plaintiffs

■ The Undersigned also notes that no party, including Westwind, has voiced specific objection to the FSBA and LASERS attempt to become co-lead plaintiffs in this class action. It is possible, however, that Westwind might not have voiced any objection to the FSBA and LASERS' request to be appointed co-lead plaintiffs since it also initially moved to be appointed co-lead plaintiff with Sawgrass.

One court has found that co-lead plaintiffs detract from the PSLRA's fundamental goal of client control of securities class actions, but may be appropriate in certain instances. *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 549 (N.D.Tex.1997). For example, co-lead plaintiffs might be appropriate in cases where two institutional investors have roughly equal losses or where two smaller investors with equal losses exist in the absence of a plaintiff with larger interest. *Id.* at 549–50.

Upon independent review of the file, the Undersigned notes that FSBA and LASERS are currently working together as co-lead plaintiffs in a securities fraud class action currently pending in the Southern District of Florida entitled *In re Pediatrix Sec. Litig.,* No. 99–6181–CIV–ZLOCH. Additionally, both FSBA and LASERS have filed affidavits indicating their intent to work together to promote the interests of the class in this case. *See* Dkt. 16, Ex. A, B. Finally, each has alleged approximately equal losses.

The Undersigned thus finds that nothing to this point would prevent FSBA and LASERS from serving as co-lead plaintiffs in this case. Again, it is important to note that should the Court restrict the class period, the balance in the co-lead plaintiffs' interests would be substantially altered. In the proposed restricted time period commencing on July 26, 1999, FSBA's losses would only be $56,151.90 and LASERS' would be $362,564.74. Westwind's alleged losses of $730,404.46 would remain the same during the proposed restricted class period. It is not certain, however, that such a change would render either one or both of FSBA and LASERS inadequate to serve as lead plaintiff as little as known about the composition of Westwind.

### iv) Adequacy of Presumed Lead Plaintiffs

Despite the presumption in favor of FSBA and LASERS as co-lead plaintiffs, Westwind asserts that FSBA and LA-SERS are inadequate lead plaintiffs.

Westwind asserts that LASERS is an inadequate lead plaintiff since LASERS declined to seek appointment as the lead plaintiff in another unrelated securities class action, despite having the largest financial interest. *See D'Hondt v. Digi Int'l Inc.*, 1997 WL 405668, at *4 n. 9 (D.Minn. April 3, 1997). The Undersigned does not find this argument persuasive, since LA-SERS' choice to pursue its own individual litigation in that instance could have been affected by a variety of reasons wholly inapplicable in this case.

■ Westwind also argues that FSBA is a "professional plaintiff" and is therefore presumptively barred from serving as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(vi). That subsection provides:

Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a

lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi). FSBA concedes it has already served as a lead plaintiff in five other class actions during the past three years. *See* Dkt. 15, Ex. B.

There does not appear to be any clear consensus among the courts or controlling authority addressing the factors a court should consider in determining whether the most adequate lead plaintiff has overcome the presumptive bar created by having served as lead plaintiff five times in three years. *See, e.g., In re Network Associates, Inc., Securities Litigation*, 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999) (relying on Congressional intent and the authorization within the PSLRA in appointing a lead plaintiff with a "track record" of prosecutions in securities suits). *But see Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1154-57 (N.D.Cal.1999) (declining to allow the FSBA to serve as lead plaintiff); *In re Telxon Corp. Securities Litigation*, 67 F.Supp.2d 803, 819-22 (N.D.Ohio 1999) (finding FSBA barred from serving as lead plaintiff because it had served as lead plaintiff in at least five other suits in a three year period).

Despite the lack of consensus, the Undersigned notes that the restriction on "professional plaintiffs" is not absolute, as the language in the PSLRA clearly grants the Court the power to appoint a lead plaintiff despite its having served as lead plaintiff in five other suits within the past three years. 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("Except as the Court may otherwise permit ...."). Certainly the legislative history makes clear that institutional Plaintiffs with "real" interests at stake are preferred plaintiffs in this context. *See* S.Rep. No. 104-98, at 10-12

(1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689–91. Further, the Court is less concerned about a plaintiff in the business of security investments being lead plaintiff on numerous occasions than if the court were to find some sort of shell corporation created for the purpose of marshaling claims to be asserted in a class action securities claim. The latter "professional plaintiff" is the one Congress appears to have had in mind when it created the presumptive bar against repeat plaintiffs.

For these reasons the Undersigned disagrees with the reasoning in *Telxon* that Congress would have expressly exempted legitimate institutional plaintiffs if it intended them to be exempted. *In re Telxon*, 67 F.Supp.2d at 821. In fact, Congress expressly granted the Courts considerable discretion to ferret out nominal shell plaintiffs in this context.

Upon review of the record in this case, the Undersigned finds that FSBA has rebutted the presumptive bar resulting from its having already served as lead plaintiff in five actions during the past three years.

■ More problematic in this case, however, is FSBA's failure to comply with the requirement in § 78u–4(a)(2)(A)(v) that it provide a sworn certification containing each action the plaintiff served, as well as *sought* to serve, as lead plaintiff. FSBA's certification did not include cases in which it unsuccessfully sought to be appointed lead plaintiff. *See* Dkt. 15, Ex. B.

*Burke*, a case from the Northern District of Alabama, holds that a movant not satisfying the certification requirement of § 78u–4(a)(2)(A)(v) may not serve as lead plaintiff. *Burke*, 102 F.Supp.2d at 1319 n. 45 (recognizing disagreement among district courts considering the issue). It is not evident from the language of the statute if all movants for lead plaintiff must file the certification, or just the plaintiffs which actually file complaints. *See* 15 U.S.C. § 78u–4(a)(2)(A) ("Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint ...."). Additionally, there is no case law on this issue binding on this Court. In light, however, of the lack of a more adequate lead plaintiff in this case, the Undersigned finds that FSBA should not be barred from serving as co-lead plaintiff by its failure to identify all of the actions filed under the Act during the three year period preceding its certification.

■ In determining that FSBA and LA-SERS should be designated as co-lead plaintiffs, the Undersigned relies additionally on Westwind's inability to establish that it is a more adequate lead plaintiff. There is a dearth of information regarding Westwind in the record. It is not even known where Westwind is located, what its business is, if it is a foreign company, and who controls it. Westwind repeatedly asserts that it is "a large institutional investor," but has not proffered any information regarding its identity, resources, and experience.

The only information regarding Westwind in the record is an affidavit of Paula Troy, an unidentified individual, on behalf of Westwind, stating that it is "willing to serve as a representative party and lead plaintiff on behalf of the class, including providing testimony at deposition and at trial, if necessary." Dkt. 18, Ex. D. Furthermore, it is also noteworthy that Westwind opposed any discovery regarding its suitability to serve as lead plaintiff despite this complete lack of information in the record.

Also problematic is Westwind's failure to file any response or explanation concerning the sudden withdrawal of Sawgrass as a proposed co-lead plaintiff. *See* Dkt. 41. The only response came from the Defen-

dants, which urged the Court to appoint Westwind. This leads the Undersigned to question the vigor with which Westwind intends to prosecute these claims on behalf of the putative class.

Accordingly, the Undersigned finds that the FSBA and the LASERS are adequate co-lead plaintiffs.

### v) Satisfying the Requirements of Fed.R.Civ.P. 23

██ Finally, the presumptive lead plaintiff must also satisfy "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Fed.R.Civ.P. 23 requires that: (1) the claims of the proposed lead plaintiff be typical of the class; and (2) the representative will fairly and adequately represent the interests of the class. *See Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *2 (M.D.Fla. Feb.6, 1997) (finding wide-ranging analysis under Rule 23 not appropriate at this stage and focusing inquiry on typicality and adequacy). Furthermore, in the absence of a showing of a reasonable basis by another plaintiff, no evidentiary proof of the Rule 23 requirements is required at the lead plaintiff appointment stage since it would vitiate Congress' intent for a speedy lead plaintiff determination. *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 550 (N.D.Tex.1997).

██ In this case the questions of law and fact common to the class include: (1) whether Sykes issued false and misleading statements during the class period relating to its business and financial results; (2) whether Defendants acted knowingly or with recklessness in issuing false and misleading financial information; (3) whether the market price of Sykes' common stock was artificially inflated during the class period because of the Defendants' allegedly actionable conduct; and (4) whether the members of the class have sustained dam-

ages, and if so, the proper measure of those damages. *See* Dkt. 14 at 11.

FSBA and LASERS have therefore satisfied the requirements of Rule 23 because their claims are typical of the class. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278–79 & n. 14 (11th Cir.2000) (finding that typicality satisfied despite factual distinctions as long as named representatives' claims share "same essential characteristics as the claims of the class at large").

Additionally, there is no indication in the record that LASERS and FSBA's interests are not wholly aligned with the other members of the class. They have thus also demonstrated that they will fairly and adequately represent the interests of the class.

Accordingly, the Undersigned finds that FSBA and LASERS have satisfied the requirements of Fed.R.Civ.P. 23 as required by 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).

### c) Designation of Lead Counsel

FSBA and LASERS also request that the law firms of Bernstein, Litowitz, Berger & Grossman, L.L.P. and Burt & Pucillo, L.L.P. be approved as co-lead counsel for the class. FSBA and LASERS also have retained the law office of Michael C. Addison to serve as liaison counsel.

Subject to the Court's approval, the PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(v). Additionally, "the most adequate plaintiff should choose lead counsel, rather than lawyers picking the plaintiffs." *Ehlert v. Singer*, 185 F.R.D. 674, 678 (M.D.Fla.1999) (citation omitted).

Upon review of the firms' resumes submitted to the Court (Dkt. 15, Ex. E and F), the Undersigned finds that Bernstein,

Litowitz, Berger & Grossman, L.L.P. and Burt & Pucillo, L.L.P. are experienced in litigating securities class actions. Furthermore, they are currently representing FSBA and LASERS in other litigation.

Accordingly, the Undersigned Recommends that Bernstein, Litowitz, Berger & Grossman, L.L.P. and Burt & Pucillo, L.L.P. be designated as co-lead counsel, and the law office of Michael C. Addison to serve as liaison counsel, in the event that the District Court appoints FSBA and LASERS as lead plaintiffs.

### E. MOTION TO CONDUCT LIMITED DISCOVERY

██ FSBA and LASERS also move for leave to conduct limited discovery regarding the adequacy of Westwind as lead plaintiff. FSBA and LASERS argue that Westwind was solicited through an allegedly improper solicitation by the law firm of Bernstein, Liebhard & Lifshitz, L.L.P. Furthermore, FSBA and LASERS argue that the Court lacks sufficient information regarding Westwind's experience, resources, willingness or ability to effectively supervise this litigation to appoint it as lead plaintiff. Westwind opposes such discovery on the grounds that FSBA and LASERS failed to overcome the presumption that Westwind and Sawgrass were the presumptive lead plaintiffs and contends that the allegations concerning the direct mailing by Bernstein Liebhard are unsupported.

Discovery may be had on the issue of the adequacy of the presumed lead plaintiff only upon a showing of a reasonable basis for finding that the presumptive most adequate plaintiff cannot adequately represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(iv).

In light of Sawgrass' withdrawal, the presumption in favor of Sawgrass and Westwind has shifted in favor of FSBA and LASERS. Any discovery involving Westwind is therefore not permitted pursuant to the PSLRA since Westwind is no longer presumptively the most adequate plaintiff. Accordingly, the Undersigned Recommends that FSBA and LASER's Motion of LASERS and FSBA for Leave to Conduct Discovery (Dkt.23) be DENIED AS MOOT.

### F. CONCLUSION

In accordance with the foregoing, the Undersigned Reports and Recommends that: (1) FSBA and LASERS' Motion for Appointment as Co–Lead Plaintiffs and for Approval of its Choice of Counsel (Dkt.13) be GRANTED; (2) Sawgrass and Westwind's Motion to Appoint Lead Plaintiffs and Appoint their Selection of Counsel (Dkt.17) be DENIED; and, (3) the Motion of LASERS and FSBA for Leave to Conduct Discovery (Dkt.23) be DENIED AS MOOT. This Recommendation is without prejudice to Defendants' rights to oppose any issue related to class certification.

### *NOTICE TO PARTIES*

Failure to file written objections to the proposed findings and recommendations contained in this Report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. *See* 28 U.S.C. § 636(b)(1).

Dated: Aug. 25, 2000.