### In re GEMSTAR—TV GUIDE INTERNATIONAL, INC. SECURITIES LITIGATION.

No. 02–02775 NM (PLAx).

United States District Court, C.D. California,

Aug. 9, 2002.

William S. Lerach, Darren J. Robbins, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Howard M. Privette, Brobeck, Phleger & Harrison, Los Angeles, CA, William F. Sullivan, Sean T. Prosser, Brobeck, Phlegar & Harrison, Marc M. Umeda, Robbins, Umeda & Fink, San Diego, CA, Daniel J. Tyukody, Jr., Robert David Weber, Clifford, Chance, Rogers & Wells, Los Angeles, CA, for Rolf Olson.

Howard M. Privette, Brobeck, Phleger & Harrison, Los Angeles, CA, William F. Sullivan, Sean T. Prosser, Brobeck, Phlegar & Harrison, Daniel J. Tyukody, Jr., Robert David Weber, Clifford, Chance, Rogers & Wells, Los Angeles, CA, for Gemstar–TV Guide International, Inc. and Henry C. Yuen

Stanley M. Grossman, Marc I. Gross, Pomerantz, Haudek, Block, Grossman & Gross, New York City, Patrick V. Dahlstrom, Pomerantz, Haudek, Block, Grossman & Gross, Chicago, IL, Brian Barry, Brian Barry Law Offices, Los Angeles, CA, for Alfred J. Anzalone, Anthony L. Anzalone and James L. Anzalone.

## AMENDED ORDER

MANELLA, District Judge.

1) APPOINTING AS LEAD PLAINTIFFS THE TEACHERS' RETIREMENT SYSTEM OF LOUISIANA AND THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT

2) APPOINTING AS LEAD COUNSEL BERNSTEIN, LITOWITZ, BERGER & GROSSMANN, L.L.P.

Gemstar—TV Guide International, Inc. ("Gemstar") develops, markets, and licenses proprietary technologies, primarily for consumers. Gemstar also provides program guide directories and services, including TV Guide Magazine. Sixteen lawsuits have been filed, alleging that, between August 1999 and April 2002, Gemstar and its affiliates engaged in a fraudulent scheme to misstate the

company's revenues, assets, and financial results in Forms 10–Q and 10–K, as well as in press releases, thus artificially inflating stock prices. After Gemstar disclosed its improper revenue recognition practices April 1, 2002, the price of its stock dropped approximately 37%, closing at $9.01 per share.

On May 28, 2002, the court consolidated all related actions, pursuant to Fed.R.Civ.P. 42(a). The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "as soon as practicable" after a motion to consolidate has been decided, the court shall appoint a lead plaintiff "that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The following plaintiffs have filed motions to be appointed lead plaintiffs:

1. Teachers' Retirement System of Louisiana and the General Retirement System of the City of Detroit (collectively, "the pension plans");

2. Georgica Advisors, L.L.C. ("Georgica Advisors") and Ardsley Partners, L.P. ("Ardsley");

3. Steven W. Chan, Normura Trust & Banking Co., Ltd. ("Nomura"), Jonathan Kovler, Henry Steig, and Richard Orlandi; and

4. Morris and Fran Gad ("the Gads").[1]

However, after filing their motions, Georgica Advisors and Ardsley—represented by Schiffrin & Barroway, L.L.P. ("Schiffrin & Barroway") and Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, L.L.P.—merged with Chan, Nomura, Kovler, Steig, and Orlandi—represented by Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P. ("Milberg Weiss"). The new group, named "Georgica Group" and represented by Milberg Weiss and Schiffrin & Barroway, seeks to be named lead plaintiff. After the merger, Milberg Weiss sent letters to other plaintiffs seeking to be appointed lead plaintiff requesting that

---

1. The following plaintiffs sought appointment as lead plaintiff, but subsequently withdrew their motions:
   1. Alfred J. Anzalone, Anthony J. Anzalone, and James L. Anzalone

2. Nathan Barrett and Jerome Furman
3. Jeffrey Brandes
4. Sherleigh Profit Sharing Plan

they withdraw their motions, but inviting them to submit requests to join Georgica Group. *See* Arleo Decl., Ex. 1 ("[I]f you believe that it would be beneficial to the Class to have your clients included as representative parties in this Action, please contact [Milberg Weiss] immediately so that we can make our clients aware of your request."). Milberg Weiss also solicited the General Retirement System of the City of Detroit ("Detroit General") to join Georgica Group. *See id.* at 5 ("[Georgica Group] is willing to work with Detroit General and certain of the other lead plaintiff applicants....").

■ The court must decide whether to appoint as lead plaintiffs the pension plans, Georgica Group, or the Gads.[2] In making this decision, the court applies a rebuttable presumption that the most adequate plaintiff is the applicant who has the largest financial interest in the relief sought and otherwise meets the requirements of Fed.R.Civ.P. 23. *Z–Seven Fund, Inc. v. Motorcar Parts & Accessories,* 231 F.3d 1215, 1217–18 (9th Cir. 2000). This presumption can be rebutted by a showing that the presumptive candidate for appointment cannot fairly or adequately represent the class, or is subject to unique defenses. *Id.* at 1218 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).[3]

■ Georgica Group has suffered financial losses of approximately $22 million. *See* Reiss Decl. ¶ 3; Napoli Decl. ¶ 2; Chan Decl. ¶ 2; Haruyama Decl. ¶ 3; Kovler Decl. ¶ 3; Steig Decl. ¶ 3; Orlandi Decl. ¶ 2. By con-trast, the pension plans have suffered losses of approximately $10 million while the Gads have suffered losses of approximately $2.6 million. *See* Nicolas Decl., Exs. C–D; Glancy Decl., Ex. B.[4] However, Georgica Group, comprised of three institutional investors and four individual investors, is too large and diverse to represent the class. "Courts must ... inquire whether a movant group is too large to represent the class in an adequate manner. At some point, a group becomes too large for its members to operate effectively as a single unit. When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement." *In re Cendant Corp. Litig.,* 264 F.3d 201, 267 (3d Cir.2001) (Becker, C.J.). While there are no bright-line rules governing this inquiry, "courts should generally presume that groups with more than five members are too large to work effectively." *Id.* (citing Brief for the Securities and Exchange Commission as Amicus Curiae at 17 n. 13).

■ The record in this case supports the presumption that Georgica Group has too many members to manage effectively this litigation. Georgica Group's three institutional and four individual investors are largely unrelated and have few apparent connections beyond their common desire to be appointed lead plaintiffs in this action.[5]

---

2. Although Georgica Group represents that the Gads have agreed to withdraw their motion, they have not filed a notice of withdrawal. Accordingly, the court will decide their motion.

3. The court need not decide whether to appoint separate lead plaintiffs to litigate separately the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act") claims, as Jeffrey Brandess and the Sherleigh Profit Sharing Plan have withdrawn their motions to be appointed lead plaintiff over the claims arising under Section 11 of the Securities Act. Regardless, the PSLRA presumes that the "lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories." *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146, 1151 (N.D.Cal.1999) (emphasis in original). *See also In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427,

445–46, 451 (S.D.Tex.2002) ("[T]here is no requirement that the claims of all plaintiffs and class members must be identical.").

4. Both Georgica Group and the pension funds represent that they have negotiated fee arrangements with their respective attorneys.

5. Although Henry Steig claims to have discussed this litigation with Richard Orlandi prior to retaining counsel, Georgica Group provides no briefing on the relationship between these two men. *See* Steig Decl. ¶ 4. Jonathan Kovler represents that he has a professional relationship with Georgica Advisors' chairman, Richard Reiss. Kovler Decl. ¶ 4. However, Kovler does not discuss this relationship and provides no basis for finding that he can work with the other members of Georgica Group.

The group members provide little detail concerning the procedures they have implemented to "provide for efficient prosecution of the action." Joint Decl. of Georgica Group ¶ 11. Georgica Group does not explain how its members and attorneys will conduct "regular meetings" efficiently or participate in the discovery process, given the group's size and the fact that its members and attorneys are scattered throughout the world. *See, e.g., In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999) (distance between lead plaintiffs and counsel would impede ability to supervise litigation).[6] The court also has no assurance that the group will be able to meet on short notice, as Georgica Group provides no explanation of its "mechanism to arrange for 'emergency' meetings." Joint Decl. of Georgica Group ¶ 11.[7] Although Georgica Group's members represent that they seek "to obtain the largest possible recovery for members of the Class," the class's recovery likely would be diminished were the court to appoint seven lead plaintiffs, as each would undoubtedly seek "costs and expenses (including lost wages) directly relating to the representation of the class." Georgica Advisors Certification ¶ 6; Ardsley Partners Certification ¶ 6; Kovler Certification ¶ 6; Orlandi Certification ¶ 6; Chan Certification ¶ 6; Steig Certification ¶ 6; Nomura Certification ¶ 6. Most important, there is no evidence that the group, comprised of seven unrelated institutional and individual investors, can honor their promise to "make decisions by consensus." Joint Decl. of Georgica Group ¶ 11. The court does not share Georgica Group's optimism that it is "unlikely" that decisions would not be reached by consensus. *See id.* Moreover, there is no evidence that conflicts among group members would be resolved efficiently, as Georgica Group provides no explanation of its alleged "procedures and rules that will govern [their] decision making process." *Id.*

Allowing Georgica Group to serve as lead plaintiff in this action and to be represented by two different law firms would defeat the purpose of choosing a lead plaintiff and undermine the objectives of the PSLRA. "One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation.... To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157–58 (S.D.N.Y.1997) (citations omitted). Although the PSLRA does not explicitly prohibit a group of unrelated individuals from acting as lead plaintiff, courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff. *See, e.g., In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 308–09 (S.D.N.Y. 2001) (court refused to appoint "artifice" of four unrelated institutional and individual investors "cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff' "); *Bowman v. Legato Sys., Inc.,* 195 F.R.D. 655, 657 (N.D.Cal.2000) (rejecting motion by six unrelated institutional and individual investors to be appointed lead counsel); *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146, 1154 (N.D.Cal.1999) ("lead plaintiff must be an individual person or entity, or at most, a close-knit 'group of persons' "); *In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1019–31 (N.D.Cal. 1999) (aggregated unrelated investors could not serve as group entitled to lead plaintiff status); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 583–87 (N.D.Cal.1999); *In re Donnkenny,* 171 F.R.D. at 157–58 (court re-

**6.** Chan and Richard Reiss of Georgica Advisers are based in New York City; Steven Napoli of Ardsley Partners is based in Connecticut; Atsuhiko Haruyama of Nomura is based in Tokyo, Japan; Kovler is based in Chicago; Milberg Weiss is based in San Diego; Patrick J. Coughlin, Esq. is based in San Francisco; and Schiffrin & Barroway, L.L.P. is based in Bala Cynwyd, Pennsylvania. Georgica Group provides no details concerning the whereabouts of Henry Steig and Richard Orlandi.

**7.** The court takes judicial notice of the fact that the time difference between the east coast—where Chan, Reiss, and Napoli are located—and Tokyo, Japan—where Haruyama is located—is thirteen hours during daylight savings time. *See* www.timezoneconverter.com.

fused to appoint six unrelated institutional and individuals investors as lead plaintiffs). *See also Cendant,* 264 F.3d at 266–67.

The record in this case suggests that Georgica Group was created in an effort to have its members designated as lead plaintiffs and, more important, its counsel designated as class counsel. There is no apparent relationship between the three institutional investors and four individual investors who comprise Georgica Group. Milberg Weiss, which initially represented Nomura and the three individuals, and Schiffrin & Barroway, which initially represented Georgica Advisers and Ardsley, are now co-counsel for Georgica Group. However, Georgica Group does not explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action. Nor does the record contain any credible explanation for the group's creation. Georgica Group represents that its members have "thoughtfully opted to join together," but does not explain why joinder is necessary or beneficial to this litigation. *See* Georgica Group's Reply Brief at 5. Tellingly, Georgica Group's counsel invited Detroit General and others to join the group. *See id.; see also* Arleo Decl., Ex. 1. Based upon the foregoing, the court concludes that it would be inappropriate to appoint Georgica Group lead plaintiffs, and its attorneys lead counsel, in this matter.

■ The court also finds that it would be inappropriate to appoint the Gads as lead plaintiffs in this matter. The court does not presume that the Gads are best-suited to act as lead plaintiffs, as they claim losses of $2.6 million, in contrast to the pension funds' claimed losses of approximately $10 million. The record contains no evidence that the Gads are competent to serve as lead plaintiffs in this matter or to supervise the host of attorneys representing them. There is no evidence that the Gads possess the requisite sophistication to supervise this litigation. Nor is there any evidence that the Gads have the resources to supervise and participate

fully in this litigation. Moreover, the court is unconvinced that the Gads appreciate the nature of the role which they seek to perform in this litigation. In their own sparse declarations, the Gads represent that they have no experience serving as lead plaintiffs in class actions within the past three years. *See* Gad Decl. ¶ 5. In short, the Gads provide no briefing and proffer no declarations concerning their ability to act as lead plaintiffs. *See, e.g., Piven v. Sykes Enters., Inc.,* 137 F.Supp.2d 1295, 1304–05 (M.D.Fla.2000) (lack of information concerning plaintiff's "identity, resources, and experience" prevented appointment as lead plaintiff).[8]

The court is concerned by the multitude of law firms representing the Gads in this matter. The Gads seek to appoint Klein & Solomon, L.L.P., the Neiman Law Firm, and the Law Office of Mel Urbach to serve as lead counsel and Glancy & Binkow, L.L.P. to serve as Plaintiff's liaison counsel. The sheer number of attorneys seeking to represent the Gads suggests that counsel, rather than the Gads, would control this litigation, in contravention of the PSLRA's intent. The court is also concerned that the Gads would require a firm to act as liaison between them and the three other firms acting as lead counsel. The fact that the Gads would require a liaison—effectively defeating the purpose of appointing a lead plaintiff—suggests that the Gads would not be able to manage this litigation and the three firms acting as lead counsel.[9] Accordingly, the court declines to appoint the Gads lead plaintiffs in this matter.

■ As the remaining plaintiffs have chosen not to seek appointment as lead counsel or have withdrawn their motions, the court appoints the Teachers' Retirement System of Louisiana ("Louisiana Pension Fund") and the General Retirement System of the City of Detroit ("Detroit General") (collectively, "the pension funds") as lead plaintiffs and their counsel—Bernstein, Litowitz, Berger & Grossmann, L.L.P.—as lead counsel. The

---

8. Indeed, the instant motion contains almost no information concerning the Gads' identities.

9. The Gads appear unwilling to retain one firm to represent them in this matter, arguing that the

court should not disturb their choice of counsel. *See* The Gads' Memorandum of Points & Authorities at 12.

Louisiana Pension Fund, the largest pension fund in Louisiana, is a public trust fund with assets in excess of $10 billion. Joint Decl. of Reeves & Zajac ¶ 2. The Louisiana Pension Fund has the sophistication, expertise, and resources to supervise this litigation effectively, having served as lead plaintiff in seven securities class actions in the past three years. Reeves Certification ¶ 5. The fund is currently seeking appointment as lead plaintiff in·three other class actions. *Id.* Detroit General is a public pension system that manages approximately $2.9 billion in assets. Joint Decl. of Reeves & Zajac § 4. Detroit General is currently seeking appointment as lead plaintiff in another class action. *Id.* ¶ 5. Ronald Zajac, Esq., General Counsel of Detroit General, has represented another public pension system in Detroit in a number of securities class actions. *Id.* ¶ 5. The pension funds have a prior relationship, having sought appointment as co-lead plaintiffs in at least one other securities class action. *Id.* ¶ 5.

The pension funds meet the requirements of Rule 23(a), as: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law and fact common to the class; 3) the claims and defenses of the pension funds are typical of the claims and defenses of the class; and 4) the pension funds will fairly and adequately protect the interests of the class, as counsel appears competent to prosecute this litigation and there are no apparent conflicts of interest between the pension funds and the class they seek to represent. *See* Fed.R.Civ.P. 23(a). *See also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992); *California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990) (Rule 23 "does not require that the named plaintiffs . . . be identically situated with all class members. It is enough if their situations share 'a common issue of law or fact.' ").

■ Georgica Group argues that the pension funds cannot act as lead plaintiffs because they possess an inherent conflict of interest and are subject to unique defenses. Specifically, the group argues that the pension funds' claims are distinct, because they retained most of their shares of Gemstar stock during the class period while other plaintiffs sold their securities during the class period. Accordingly, the pension funds allegedly have an incentive to ensure that this litigation does not damage the company to preserve the value of the stock they currently hold. Based upon this purported conflict, Georgica Group contends that Defendants could argue that the pension funds should not be appointed as class representatives or that the class should not be certified. *See In re Seagate Tech. II Sec. Litig.*, 843 F.Supp. 1341, 1362 (N.D.Cal.1994). However, "[e]very class member shares an overriding common interest in establishing the existence and materiality of misrepresentations." *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir.1975). Moreover, many courts have rejected this argument. *See, e.g., In re AST Research Sec. Litig.*, No. CV 94–1370 SVW, 1994 WL 722888, at *4–5 (C.D.Cal. Nov. 8, 1994) (the Ninth Circuit has "rejected contentions that the interests of in/out traders can prevent certification of a class" that includes "retention plaintiffs") (citing *Blackie*, 524 F.2d at 910); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 621 (C.D.Cal.1985) (Rymer, J.) (no conflict between retention purchasers and "in-and-out" traders); 4 Newberg on Class Actions § 22.32, at 22–137–140 (3d ed. 1995) ("[A] plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased and then sold them, and vice versa.") (citations omitted). Indeed, *Seagate* —the sole authority the group cites in support of its position— acknowledges that "defendants have had little success in preventing class certification on the basis of this 'equity' conflict." *Seagate*, 843 F.Supp. at 1362.[10]

■ Georgica Group argues that the Louisiana Pension Fund is barred from acting as lead plaintiff, as the PSLRA permits "a per-

---

**10.** Even were the court to accept Georgica Group's argument, by its own admission, its members held some shares at the end of the class period. Georgica Group's Opposition at 14. Therefore, the same purported conflict would overshadow Georgica Group's efforts to prosecute this action. Georgica Group does not explain how this alleged conflict would be eliminated by the fact that its members sold some of their shares at a loss during the class period.

son" to act as lead plaintiff in no more than five securities class actions during any three-year time period. 15 U.S.C. § 78u–4(a)(3)(B)(vi).[11] However, Georgica Group provides no briefing on the issue whether an institutional investor, *viz.*, a pension fund, is a "person" for purposes of the PSLRA's professional plaintiffs bar. Courts have refused to apply the restriction to institutional investors, based upon the PSLRA's legislative history. *See, e.g., Naiditch v. Applied Micro Circuits Corp.*, No. 01–CV–0649–K–AJB, 2001 WL 1659115, at *6–9 (S.D.Cal. Nov.5, 2001) (PSLRA's restrictions on professional plaintiffs do not apply to institutional investors); *In re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1112 (N.D.Cal. 2001) ("Institutional investors may need to exceed this limitation and do not represent the type of professional plaintiff [the PSLRA] seeks to restrict.") (quoting House of Representatives Conference Report No. 104–396 of the 104th Congress at 35 (1999)); *Piven*, 137 F.Supp.2d at 1304–05 (firms in the business of security investments not intended to be bound by PSLRA's bar on professional plaintiffs); *In re Network Assocs.*, 76 F.Supp.2d at 1030 (Congress intended to permit courts to exempt institutional investors from PSLRA's professional plaintiffs' restrictions); *Blaich v. Employee Solutions, Inc.*, No. 97–545–PHX–RGS, 1997 WL 842417, at *2 (D.Ariz. Nov.21, 1997) ("[T]he general restriction of serving in more than five cases as a lead plaintiff was not intended to apply to institutional investors....").

Regardless, the PSLRA expressly authorizes courts to waive the restriction on professional plaintiffs to achieve the objectives of the statute. *See* 15 U.S.C. § 78u–4(a)(3)(B)(vi) (restriction on professional plaintiff applies "[e]xcept as the court may otherwise permit, consistent with the purposes of this section...."). As discussed

above, neither Georgica Group nor the Gads would be appropriate lead plaintiffs, and courts have waived the PSLRA's professional plaintiff restriction when there were no other suitable applicants for lead plaintiff. *See, e.g., In re Critical Path, Inc.*, 156 F.Supp.2d at 1107–12; *In re Network Assocs.*, 76 F.Supp.2d at 1027–31.[12] The mere fact that the Louisiana Pension Fund has acted as lead plaintiff in seven cases over the past three years is unremarkable for an institutional investor in the business of managing $10 billion in assets. *See, e.g., Naiditch*, 2001 WL 1659115, at *3 ("understandable" that large institutional investor would be appointed lead plaintiff on 11 occasions).

The record contains no evidence that the pension funds could not assume the duties of lead plaintiffs. At present, Detroit General is not acting as lead plaintiff in any other securities class action, and the Louisiana Pension Fund represents that it is prepared to supervise this litigation, as well as the other cases in which it is or may become lead plaintiff. Joint Decl. of Reeves & Zajac ¶¶ 3, 5. The fact that other courts have allowed the Louisiana Pension Fund in particular to act as lead plaintiff in more than five securities class actions demonstrates that it is equipped to do so. Moreover, the Louisiana Pension Fund's experience acting as lead plaintiff will benefit the class. *See, e.g., Armour v. Network Assocs., Inc.*, 171 F.Supp.2d 1044, 1051 (N.D.Cal.2001) (Teachers' Retirement System of Louisiana "is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements.... [T]he $10 billion in assets held by Louisiana Teachers and the sworn declarations of Reeves, its General Counsel, evidence Louisiana Teachers' willingness and ability—in terms of both resources and litigation experience—to assume control over this case.") (citations omitted).[13]

---

**11.** Georgica Group also argues that Mr. Zajac, General Counsel of Detroit General, has "sought" lead plaintiff status "far more than five times." Georgica Group's Reply Brief at 11. However, the PSLRA contains no limit on the number of times a person may *seek* appointment as lead plaintiff.

**12.** The court does not hold that institutional investors are presumptively the most adequate lead

plaintiff solely by virtue of their status as institutional investors.

**13.** Georgica Group concedes that "with the sole exception of the Florida State Board of Administration, there is perhaps no other institutional investor in the United States which has a 'longer record of participation in securities litigation' than the [Teachers' Retirement System of Louisiana]." Georgica Group's Opposition at 12.

Defendants contend that appointing multiple lead plaintiffs would hinder this litigation. However, the court finds that no prejudice would result from appointing the pension funds as lead plaintiffs, given their sophistication and experience prosecuting these types of cases and working together. Moreover, the fact that two institutional investors—whose representatives possess PSLRA experience—would supervise a single law firm suggests that the pension funds, rather than Bernstein, Litowitz, Berger & Grossmann, L.L.P., would control this litigation.[14] The class may also benefit by having two lead plaintiffs, as it ensures joint control over the litigation and prevents a single lead plaintiff from acting unchecked in a manner contrary to the interests of the class.

Based upon the foregoing, the court appoints the Teachers' Retirement System of Louisiana and the General Retirement System of the City of Detroit as lead plaintiffs and Bernstein, Litowitz, Berger & Grossmann, L.L.P. as lead counsel.[15]

IT IS SO ORDERED.

---

**14.** The PSLRA was not intended to prevent institutional investors from acting through their representatives, often in-house counsel.

**15.** The court agrees with Georgica Group that limited discovery on the issues raised in the instant motions would not be appropriate.