**Jeff BOWMAN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**LEGATO SYSTEMS, INC., et al., Defendants.**

**No. C–00–20111–JF.**

United States District Court, N.D. California, San Jose Division.

July 28, 2000.

Alan Schulman, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, for Lead

Plaintiff, the Policemen and Firemen Retirement System of the City of Detroit.

Bruce G. Vanyo, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Defendants.

ORDER ADDRESSING MOTIONS FOR (1) CONSOLIDATION, (2) APPOINTMENT OF LEAD PLAINTIFF, (3) APPROVAL OF LEAD PLAINTIFF'S COUNSEL AND (4) *IN CAMERA* REVIEW OF DOCUMENTS

FOGEL, District Judge.

On May 1, 2000, the Court heard argument regarding motions for (1) consolidation, (2) appointment of lead plaintiff, (3) approval of lead plaintiff's counsel and (4) *in camera* review of documents. For the reasons set forth below, the Court will consolidate the lawsuits against Legato Systems, Inc., appoint The Policemen and Firemen Retirement System of the City of Detroit as lead plaintiff and approve the law firm of Bernstein Litowitz Berger & Grossmann LLP as lead plaintiff's counsel. With respect to the motion for *in camera* review of documents, the Court will assume for the purposes of its selection of lead plaintiff that the documents in question support their proponent's position as to the nature of the Legato Group. The Court therefore concludes that it need not review the documents *in camera* or otherwise.

## I. BACKGROUND

Before the Court are thirty-one related class action lawsuits asserting claims for securities fraud pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b–5 promulgated thereunder. The plaintiffs in each of these lawsuits allege that officers and directors of Legato Systems, Inc. ("Legato") made false and misleading statements about the company's financial picture in Q3 1999. These statements allegedly inflated the price of Legato's stock, allowing Legato's officers and directors to reap huge profits by selling thousands of shares of common stock. In January 2000, Legato adjusted downward its previously reported results for Q3 1999 and stated that results for Q4 1999 would be less than expected. The company's stock fell more than 40% on this news.

Thirty-one separate class action lawsuits have been filed on behalf of persons claiming injuries as a result of the alleged securities fraud. All of these cases have been transferred or are in the process of being transferred to this Court.

Several parties have moved for consolidation of the thirty-one actions. Additionally, several plaintiffs or groups of plaintiffs have filed motions seeking appointment as lead plaintiff and approval of lead plaintiff's counsel. Finally, one applicant for appointment as lead plaintiff has filed an *ex parte* motion seeking *in camera* review of certain documents allegedly relevant to the selection of lead plaintiff. The Court will address these motions as follows.

## II. LEGAL STANDARDS

██ When multiple putative classes assert substantially the same claims under the 1934 Act, the Court must resolve any motions to consolidate prior to considering the issue of appointing a lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii). As soon as is practicable after the Court decides whether to consolidate the actions, the Court shall appoint "the most adequate plaintiff" to act as lead plaintiff for the litigation. *See id.* The Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that: (1) has either filed the complaint or made a motion in response to a notice advising potential class members about the action; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii). This presumption may be rebutted by evidence that the person or group: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses which would prevent adequate representation of the class. *See id.*

## III. CONSOLIDATION

██ All parties who have commented on the issue of consolidation agree that consoli-

dation is appropriate in this case. While there are some factual differences in the claims asserted in the various lawsuits, all of the lawsuits are based upon a "fraud on the market" theory arising out of the same set of alleged statements and omissions. Under these circumstances, the Court concludes that consolidation of all the lawsuits will promote judicial efficiency and conservation of resources. The Court therefore will consolidate the actions pursuant to Federal Rule of Civil Procedure 42(a).

Several of the parties have submitted proposed consolidation orders. The Court finds proposed Pre–Trial Order No. 1, submitted by Defendants, most appropriate. This proposed order lists all the lawsuits to be consolidated, establishes a master file number, provides for the handling of any later-filed cases and establishes a timeline for the filing of a consolidated class action complaint. The Court has signed proposed Pre–Trial Order No. 1 in conjunction with the present order. It is the Court's intent that this order consolidate the cases for all purposes, including trial. However, the Court does not intend to preclude the possibility that it may be necessary to create sub-classes or to effect a full or partial deconsolidation of the cases at some time in the future.

The order consolidating the actions grants Plaintiffs thirty days within which to file and serve a consolidated complaint. Defendants will be granted thirty days after receipt of the consolidated complaint within which to respond. The parties may stipulate to extend these deadlines.

## IV. APPOINTMENT OF LEAD PLAINTIFF

Six entities or groups have filed motions to be appointed as lead plaintiff in this action: (1) The Bryan Lead Plaintiff Group; (2) The Silverman Group; (3) The Legato Plaintiffs Group; (4) Sovereign Bancorp, Ltd.; (5) The Legato Systems Lead Plaintiff Group ("the Legato Group"); and (6) The Policemen and Firemen Retirement System of the City of Detroit ("Detroit"). However, the first four entities or groups in this list have withdrawn their motions and indicated support for appointment of Detroit. As a result, only two applicants for appointment as lead plaintiff remain—Detroit and the Legato Group.

Detroit is a large public pension fund which asserts a loss in excess of $1 million from purchases of Legato common stock. The Legato Group is comprised of two institutional plaintiffs, Four Sigma Capital Limited Partnership and Sun America Aggressive Growth Portfolio, and four individuals, Adam Rosenberg, Michael Oles, Gary Ponagajba and Shailesh Shah. These six plaintiffs assert a combined loss in excess of $2 million. The Legato Group appears to be a subset of more than 1,000 plaintiffs recruited by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP. There is no evidence that the six members of the Legato Group had any relationship prior to this litigation.

The Court's first task is to determine whether both applicants are eligible for appointment as lead plaintiff. There is no doubt that Detroit is eligible—as a large institutional investor with significant monetary losses, Detroit is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements discussed above by enacting the Private Securities Litigation Reform Act of 1995 ("Reform Act"), Pub.L. No. 104–67 (1995). *See In re Network Associates, Inc. Securities Litigation,* 76 F.Supp.2d 1017, 1020–21 (N.D.Cal.1999)(quoting House Conf. Rep. 104–369, 104 Cong., 1st Sess., 33–35 (1995), U.S.Code Cong. & Admin. News, 104 Cong. 1st Sess. 732–34 (1995)); *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146, 1152 (N.D.Cal.1999). However, there are serious questions as to whether the Legato Group is eligible for appointment as lead plaintiff.

As the Legato Group points out, the statutory language provides explicitly that the lead plaintiff may be a "member or members" of the putative class, or a "person or group of persons." 15 U.S.C. § 78u–4(a)(3)(B). The statute itself contains no language limiting the phrases "members" or "group of persons." The Legato Group therefore argues that, pursuant to the plain language of the statute, *any* group is eligible to act as lead plaintiff provided other statutory requirements are met.

Detroit contends that the Court must give the phrases "members" and "group of persons" a more limited reading. As Detroit points out, several recent district court decisions, including two in this district, have held either explicitly or implicitly that the statutory language is ambiguous and must be read in the context of the overall scheme and purpose of the Reform Act. *See, e.g., Network Associates,* 76 F.Supp.2d at 1023–25; *McKesson,* 79 F.Supp.2d at 1153–54; *In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d 803, 811–16 (N.D.Ohio 1999). These decisions note that one of the primary purposes of the Reform Act was to eradicate "lawyer-driven" litigation—that is, litigation initiated by plaintiffs' lawyers who recruit large numbers of shareholders as clients, control the strategy of the lawsuit and collect large fees out of the resulting settlement or judgment. *See Network Associates,* 76 F.Supp.2d at 1019–20; *McKesson,* 79 F.Supp.2d at 1152; *Telxon,* 67 F.Supp.2d at 815 n. 21. The Reform Act was intended to create a new model for securities fraud litigation, under which the district court would appoint a strong lead plaintiff who would actively manage the litigation on behalf of the class. *See id.* Given this purpose, many district courts have rejected lead plaintiff applications from large, lawyer-solicited aggregations of shareholders or from subsets of such aggregations. *See, e.g., Network Associates,* 76 F.Supp.2d at 1024–25; *McKesson,* 79 F.Supp.2d at 1153–54; *Telxon,* 67 F.Supp.2d at 816.

This Court agrees that the phrases "members" and "group of persons" must be read in the context of the overall scheme and purpose of the Reform Act. It is beyond dispute that one of the Reform Act's primary purposes was to eradicate lawyer-driven securities fraud class actions. From this fact flows the inevitable conclusion that the Legato Group is not the type of "group" which Congress intended to act as lead plaintiff. It is undisputed that the Legato Group is a subset of a larger group of more than 1,000 shareholders recruited by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP. The six members of the Legato Group had no pre-existing relationship. To the contrary, it appears that the members of the Legato Group were hand-picked by the Milberg firm for the sole purpose of obtaining lead plaintiff status, thus conferring lead plaintiff's counsel status on the Milberg firm.

The Legato Group argues that many of the concerns underpinning the decisions in *Network Associates, McKesson* and *Telxon* are not present here. For example, the decision in *Network Associates* was based in part upon the fact that the lawyer-solicited group in question had no decision making apparatus, attended no organized meetings and had no cohesive identity. *Network Associates,* 76 F.Supp.2d at 1022. The *McKesson* and *Telxon* decisions expressed similar concerns. *McKesson,* 79 F.Supp.2d at 1153–54; *Telxon,* 67 F.Supp.2d at 816. The Legato Group contends that such concerns do not apply in the present case, because the six members of the Legato Group meet regularly and stand willing and able to control the litigation in the manner desired by Congress. The Legato Group has requested (over the strenuous objections of Detroit and other plaintiffs) that the Court conduct an *in camera* review of minutes from several meetings which it asserts support these contentions.

Because the Court questions the propriety of reviewing documents bearing on the substance of the instant motions *in camera,* the Court will assume for purposes of analysis that the documents do in fact support the Legato Group's representations. The Court is impressed by the efforts of the Legato Group and its counsel to overcome the obstacles erected by the decisions addressed above. However, given the Court's conclusion that the Legato Group was solicited and created by the Milberg firm solely for the purpose of obtaining appointment as lead plaintiff—and thus allowing the Milberg firm to obtain appointment as lead plaintiff's counsel—the Court remains convinced that the Legato Group is not within the definition of "group" as that word is used in the Reform Act.

Having determined that the Legato Group is not eligible for appointment as lead plaintiff and that the only other applicant, Detroit, is eligible for such appointment, the Court

will appoint Detroit as lead plaintiff in this consolidated action.

## V. APPROVAL OF LEAD PLAINTIFF'S COUNSEL

The lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Based upon the evidence in the record, the Court is satisfied that Detroit's choice of counsel is well qualified to represent the class. The Court also is satisfied that the Court has ample means to address any issues concerning the adequacy of counsel's performance which may arise as the instant litigation progresses. Accordingly, the Court will approve the law firm of Bernstein Litowitz Berger & Grossmann LLP as lead plaintiff's counsel.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

(1) the actions are consolidated;

(2) Detroit is appointed as lead plaintiff;

(3) Detroit's choice of counsel, Bernstein Litowitz Berger & Grossmann LLP, is approved as lead plaintiff's counsel;

(4) the Legato Group's *ex parte* motion for *in camera* review of documents is denied as moot;

(5) an amended consolidated class action complaint shall be filed and served within thirty (30) days; and

(6) a response to the amended consolidated class action complaint shall be filed and served within thirty (30) days after receipt of such complaint.