Ilene ARMOUR, On Behalf of Herself and All Others Similarly Situated Plaintiff,

v.

NETWORK ASSOCIATES, INC., William L. Larson and Prabhat K. Goyal, Defendants.

No. C 00–4849 MJJ, C 01–0860, C 01–0831, C 01–00007, C 01–0861, C 01–0856, C 01–0008, C 01–0599, C 01–1575, C 01-20183.

United States District Court, N.D. California.

June 5, 2001.

William S. Lerach, Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Patrick J. Coughlin, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Ilene Armour.

Robert S. Gans, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, for Teachers' Retirement System of Louisiana.

Alan R. Plutzik, Kathryn A. Schofield, Farrow Bramson Baskin & Plutzik, Walnut Creek, CA, for Raymond E. Morales.

Boris Feldman, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Network Associates, Inc., Willliam L. Larson.

## ORDER APPOINTING LOUISIANA TEACHERS' RETIREMENT SYSTEM OF LOUISIANA LEAD PLAINTIFF AND APPROVING ITS CHOICE OF COUNSEL

JENKINS, District Judge.

Before the Court are three competing motions regarding the appointment of lead plaintiff and approval of lead counsel in this securities fraud class action lawsuit brought against Network Associates, Inc. ("Network Associates") and two of its corporate officers. The members of the purported class that seek to be appointed lead plaintiff and to have the Court approve their choice of lead counsel are (1) the Louisiana Teachers' Retirement System of Louisiana ("Louisiana Teachers"), (2) the Iowa Bakers Local 433 Pension Fund and Twin Cities Bakery Drivers Local 289 Pension Fund (the "Bakers Pension Funds"), and (3) Raymond E. Morales ("Morales"). Having considered the papers submitted by the parties and the arguments of counsel at the May 8, 2001 hearing on this matter, and for the reasons set forth below, the Court hereby appoints Louisiana Teachers' as lead plaintiff in this action and approves Louisiana Teachers' choice of counsel.

## I. Factual Background

This matter involves eleven related class actions that have been consolidated for resolution in this Court.[1] The purported class in each case consists of all persons, except the defendants, who purchased Network Associates securities during the period from July 19, 2000 to December 26, 2000 (the "Class Period"). The complaints in these actions generally allege that the defendants violated the federal securities laws by disseminating false and misleading statements concerning Network Associates' current operations and its future prospects. In particular, the plaintiffs claim that although distributors of Network Associates' products were not accepting new shipments and were returning tens of millions of dollars of Network Associates' products, the defendants continued to make positive but false statements about Network Associates' current business and future prospects throughout the second half of 2000. On December 26, 2000, Network Associates announced significant losses for the fourth quarter 2000, a change in the way it accounted for sales to distributors, the replacement of its Chairman and Chief Executive Officer, and the resignations of its Chief Financial Officer and President. The day after these disclosures, Network Associates' stock significantly declined, closing at $4.50 per share on December 27, 2000. The stock had traded as high as $27.00 per share during the Class Period.

## II. The Proposed Lead Plaintiffs

### A. Louisiana Teachers' Retirement System of Louisiana

Louisiana Teachers is a public pension fund with over $10 billion in assets under management. It claims losses of $1,043,205.16 from purchases of 184,500

---

1. The following cases have been consolidated with *Armour v. Network Assocs., Inc.,* the low-numbered lawsuit against Network Associates:

    *Wendell v. Network Assocs.,* C 01–00007;
    *Lukoff v. Network Assocs.,* C 01–0008;
    *Rizzuti v. Network Assocs.,* C 01–0860;

    *McDougal v. Network Assocs.,* C 01–0861;
    *539, Inc. v. Network Assocs.,* C 01–0599;
    *Novakovic v. Network Assocs.,* C 01–0831;
    *Iowa Bakers v. Network Assocs.,* C 01–0856;
    *Denigris v. Network Assocs.,* C 01–20170;
    *Lam v. Network Assocs.,* C 01–20183;
    *Morales v. Network Assocs.,* C 01–1575.

shares of Network Associates common stock during the Class Period. These stock purchases occurred from December 6, 2000 through December 21, 2000. Through declarations signed by its General Counsel, William T. Reeves, Jr. ("Reeves"), Louisiana Teachers expresses its willingness and ability to serve as lead counsel in this action. *See* Exh. C to Decl. of Alan Schulman in Support of Louisiana Teachers' Motion to be Appointed Lead Plaintiff; Supp. Decl. of William T. Reeves attached as Exh. A to Decl. of Blair A. Nicholas in Support of Louisiana Teachers' Reply Memorandum. Reeves states that he has experience monitoring outside litigation matters for the Louisiana Teachers' pension fund and supervising outside litigation counsel. Further, he maintains that Louisiana Teachers possesses the sophistication, expertise, and resources to supervise this litigation and its counsel effectively. He also explains his familiarity with the provisions of the Private Securities Litigation Reform Act ("PSLRA") and Louisiana Teachers' intention to fulfill its fiduciary duties to provide adequate representation to all class members, as is required by the PSLRA. Louisiana Teachers has selected Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") to serve as its counsel in this action. According to Reeves, Bernstein Litowitz was selected based on its preeminence in representing public pension funds in securities class action litigation, successful track record, expertise and resources to serve as lead counsel, and discussions with the firm regarding the details of this particular case. Preliminary discussions have resulted in Bernstein Litowitz agreeing to serve as lead counsel based on a percentage of recovery method at percentages which Reeves claims are significantly below those typically awarded in a case of this type.

### B. Iowa Bakers Local 433 Pension Fund and Twin Cities Bakery Drivers Local 289 Pension Fund

The Bakers Pension Funds are "Taft–Hartley" employee benefit funds that are responsible for the retirement investments of members of the Bakers Local 433 and Drivers Local 289 unions. Each fund is separately controlled by a Board of Trustees comprised of management and union representatives. Together, the funds currently have approximately $100 million invested in securities on behalf of 1000 pensioners. The Bakers Pension Funds claim to have suffered over $90,000 in losses from purchases of 4000 shares of Network Associates securities during the Class Period. The Bakers Pension Funds move to be appointed the only lead plaintiff in this action. However, they alternatively contend that if the Court finds Louisiana Teachers to be equally qualified to serve as lead plaintiff, then Bakers Pension Funds and Louisiana Teachers should be appointed co-lead plaintiffs in this case.

### C. Raymond E. Morales

Morales is an individual investor who purchased 20 shares of Network Associates securities during the Class Period. His losses are estimated to be $371.00. Morales claims to have negotiated a fee arrangement with two law firms—Farrow, Bramson, Baskin & Plutzik and Beattie and Osborn LLP—that he claims will save the class millions of dollars in legal fees by allowing the class to retain a greater percentage of any recovery in this case.

### III. The Private Securities Litigation Reform Act

The PSLRA governs the appointment of lead plaintiffs in securities class actions. Pursuant to 15 U.S.C. § 78u–4, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class

that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that "the most adequate plaintiff in any private action arising under this title is the person or group of persons that (1) 'either filed the complaint or made a motion' to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of "lawyer-driven" securities class actions. *See* Statement of Managers—The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104–369, 104th Cong., 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. By creating the PSLRA's lead plaintiff presumption, Congress sought to encourage the involvement of institutional investors in securities class actions, and thereby "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *Id.; see also In re Network Associates, Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1020 (N.D.Cal. 1999) (*"Network Associates I "*); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 548 (N.D.Tex.1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"). The underlying assumption of the PSLRA's lead plaintiff provisions is that the greater resources and litigation experience possessed by institutional investors makes them better equipped to serve as lead plaintiffs in securities class actions. *See, e.g.,* H.R. Conf. Report No. 104–369, 104th Cong., 1st Sess. ("Institutional investors and other class members with large amounts at stake will represent the interests of the class more effectively than class members with small amounts at stake."); *In re California Micro Devices Sec. Litig.,* 168 F.R.D. 257, 275 (N.D.Cal.1996) (*"California Micro I "*); *In re Cendant Corp. Litig.,* 182 F.R.D. 144, 145–46 (D.N.J. 1998).

## IV. Scope and Application of the PSLRA's Lead Plaintiff and Lead Counsel Provisions

Through the incorporation of Rule 23's requirements, the PSLRA clearly provides that the lead plaintiff inquiry is not confined to the proposed lead plaintiff's financial interest in the litigation. In addition to examining the proposed lead plaintiff's claimed financial loss, a court must also consider whether the proposed lead plaintiff satisfies Rule 23 and will therefore carry out the fiduciary duties that a class representative owes to the represented class. *See, e.g.,* Fed.R.Civ.P. 23(d) ("the court may make appropriate orders ... for the protection of the members of the class"); *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (class representative is a fiduciary for absent class members). Primary among these duties is the obligation of the class representative to select class counsel and monitor the conduct of class counsel throughout the litigation. Accordingly, in order to determine whether a prospective lead plaintiff satisfies the re-

quirements of Rule 23, and thus may potentially enjoy the lead plaintiff presumption of the PSLRA, a court should consider the manner in which the prospective lead plaintiff retained counsel and negotiated an attorney's fee for the class. *See In re Quintus Sec. Litig.*, 148 F.Supp.2d 967 (N.D.Cal.2001) and *In re Copper Mountain Networks Sec. Litig.*, 201 F.R.D. 475, 481 (N.D.Cal.2001) (*"Quintus"*). Indeed, the PSLRA indicates the necessity of such an inquiry by making the lead plaintiff's selection and retention of class counsel "subject to the approval of the court." 15 U.S.C. § 78u–4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."); H.R. Conf. Report No. 104–369, 104th Cong., 1st Sess. ("The Conference Committee does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class.").

At the outset of the litigation, "a proposed lead plaintiff can best demonstrate the willingness and ability to discharge the fiduciary duties of the lead plaintiff by demonstrating the willingness and ability to take charge of the litigation and negotiate a reasonable representation arrangement with class counsel." *Quintus*, 201 F.R.D. at 481. "If a proposed lead plaintiff cannot fulfill this obligation, it is difficult to imagine that such plaintiff can adequately protect the class in the ensuing litigation." *Hernandez v. Copper Mountain Networks, Inc.*, No. C 00–3894 VRW, 2001 WL 789458, at \*\*4–5 (N.D.Cal. Feb. 5, 2001). In other words, a prospective lead plaintiff who fails to select appropriate class counsel, *i.e.* counsel that meets the approval of the court pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), arguably cannot meet the adequacy requirements of Rule 23 and the PSLRA.

Various courts have commented on and/or implemented differing methods for the approval of lead plaintiff's selected counsel. The most straightforward situation is presented where the court determines the plaintiff with the largest financial loss has adequately negotiated with counsel and has otherwise satisfied the adequacy requirements of Rule 23. If this is the case, the PSLRA presumption controls and the court "need not, and indeed should not, substitute its judgment for that of the lead plaintiff." *Quintus*, 201 F.R.D. at 482; *Bowman v. Legato Systems*, 195 F.R.D. 655, 659 (N.D.Cal.2000). Thus, the lead plaintiff's choice of counsel in such circumstances should be approved by the court.

In other cases, courts have determined that no prospective lead plaintiff has adequately selected counsel. This presents two options for the court. Where a plaintiff appears to have the ability and incentive to conduct adequate negotiations with counsel, the court can require that plaintiff to "undertake such a process and appoint that plaintiff as lead plaintiff subject to confirmation that the responsibility of identifying and negotiating reasonable arrangements with counsel has been discharged." *Quintus*, 201 F.R.D. at 482; *see, e.g., Network Associates Inc.*, 76 F.Supp.2d 1017; *California Micro I*, 168 F.R.D. at 275–76. Under this method, the provisionally designated lead plaintiff solicits representation bids from law firms and chooses the bid that it considers most advantageous to the class. *See Quintus*, 201 F.R.D. at 486. According to Judge Walker of this district, who in 1990 pioneered the use of competitive bidding for selecting class counsel in securities litigation, *see In re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D.Cal.1990) (*"Oracle I"*), "[t]his approach is faithful to the test of the PSLRA, which delegates the duty of se-

lecting lead counsel to the lead plaintiff, but at the same time secures for the class the benefits of a competitive selection process." *Quintus,* 201 F.R.D. at 486.

On the other hand, where it appears that the purported lead plaintiff lacks the ability and incentive to negotiate an adequate arrangement with class counsel or has failed to negotiate an acceptable arrangement, the court, in the exercise of the fiduciary duties it owes to class action members, can itself supervise the selection and terms of class representation. *See Quintus,* , 201 F.R.D. at 482–483, 484. This option necessarily involves a determination of the compensation provided to counsel for their legal services. The court may set an appropriate fee for counsel at the conclusion of the litigation, using either the lodestar or benchmark percentage fee methods. *See, e.g., Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830 (9th Cir.1982) (adopting a lodestar compensation approach based on the fixing of a reasonable rate of hourly compensation); *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *but see Oracle I,* 131 F.R.D. at 689 ("the lodestar approach ... is now thoroughly discredited by experience"). Alternatively, the court itself can select class counsel and the terms of representation at the start of the case through a competitive bidding process. *See, e.g., Quintus,* at 973–78; *In re Oracle Sec. Litig.,* 852 F.Supp. 1437, 1457 (N.D.Cal.1994) ("*Oracle II* "); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 587–88 (N.D.Cal.1999); *In re Bank One Shareholders Class Actions,* 96 F.Supp.2d 780, 784 (N.D.Ill.2000) (after appointing a lead plaintiff, the court selected counsel for that plaintiff using a competitive bidding process); *Cendant,* 182 F.R.D. at 146 (after designating two lead plaintiffs, court required that lead counsel be selected through competitive bidding, but

afforded each lead plaintiff's present counsel the opportunity to meet the lowest bid); *Sherleigh Assocs. LLC v. Windmere–Durable Holdings, Inc.,* 184 F.R.D. 688, 696, 699–700 (S.D.Fla.1999) (after provisionally appointing a lead plaintiff, court required bidding process for selection of class counsel; on reconsideration, Court distinguished *Cendant,* and declined to grant two law firms the right to match the lowest bid); *Raftery v. Mercury Finance Co.,* 1997 WL 529553, at *1–*2 (N.D.Ill. Aug.15, 1997). The bidding process requires all interested law firms to submit bids to the court with details of their litigation experience, proposed fees, and other pertinent information. Based on these submissions, the court selects counsel for the lead plaintiffs, often choosing the law firm is willing to undertake the representation at the lowest price. *See Oracle II,* 852 F.Supp. at 1452–53; *Cendant,* 182 F.R.D. at 151.

Although the competitive bidding process has gained wide use in recent years, it must be noted that this method of selecting class counsel has not been universally accepted by all courts. In fact, some courts have rejected the method outright. For instance, in *Steiner v. Aurora Foods, Inc.,* No. C–00–602 CW (N.D.Cal. Jun. 5, 2000), competitive bidding was rejected because it "appears to be contrary to the plain language of the PSLRA." *Id.* at 9–10. According to the *Steiner* ruling, a court's authority under the PSLRA to approve counsel selected by the lead plaintiff, *see* 15 U.S.C. § 78u–4(a)(3)(B)(v), and to limit the attorneys' fees awarded to a reasonable percentage of any recovery, *see* 15 U.S.C. § 78u–4(a)(6), is "sufficient to ensure that the interests of the class are protected, without depriving the lead plaintiff of its right to the counsel of its choice." *Steiner,* at 10. Likewise, in *In re MicroStrategy Inc. Sec. Litig.,* 110 F.Supp.2d 427 (E.D.Va.2000), the court concluded that an "imaginative, if unautho-

rized proposal to abandon the statutory lead plaintiff selection procedure and adopt instead a competitive bidding process" finds no warrant in the PSLRA. *Id.* at 437–438. The *Microstrategy* court explained that "approval [of the lead plaintiff's selection of counsel] should not be based on whether plaintiff's chosen counsel promises to charge a cheaper fee than anyone else." *Id.* Instead, "a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources, saving the question of fees until the conclusion of the litigation." *Id.* at 438.

## V. Appointment of Lead Plaintiff

In this case, Louisiana Teachers is the most adequate plaintiff under the terms of the PSLRA's lead plaintiff presumption. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). It has filed a motion to be appointed lead plaintiff, thereby satisfying the first requirement of the presumption. Second, it has the largest financial interest in the relief sought by the class by reason of the fact that it has suffered the greatest financial loss of all proposed lead plaintiffs. Louisiana Teachers' estimated loss of over $1 million significantly eclipses the $90,000 purportedly lost by the Bakers Pension Funds and overwhelmingly exceeds Morales' estimated loss of $371.00. Third, as discussed in more detail below, Louisiana Teachers satisfies the requirements of Rule 23 because its claims are similar to the claims of other class members and because it has demonstrated that it is willing and able to obtain appropriate class counsel and adequately prosecute this case. The appointment of Louisiana Teachers as lead plaintiff is not only appropriate under the express terms of the PSLRA's "most adequate plaintiff" presumption, it also conforms with the Congressional concerns that motivated passage of the PSLRA. As an institutional investor with a large financial stake in the outcome of this litigation, Louisiana Teachers "is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements." *Bowman,* 195 F.R.D. at 657. Its significant losses provide it with the incentive to actively represent the class in obtaining a recovery for the defendants' alleged securities violations. Moreover, the $10 billion in assets held by Louisiana Teachers and the sworn declarations of Reeves, its General Counsel, evidence Louisiana Teachers' willingness and ability—in terms of both resources and litigation experience—to assume control over this case.

■ In order to establish itself as the "most adequate plaintiff" under the PSLRA, Louisiana Teachers must show that it can discharge the fiduciary duties that a class representative owes to absent class members under Rule 23. As mentioned, Louisiana Teachers has made this showing in this case. Rule 23 provides that a party may serve as a class representative if four prerequisites are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). While the PSLRA requires that the lead plaintiff satisfy all of Rule 23's requirements, the third and fourth requirements of Rule 23—typicality and adequacy—are the key factors for a court's lead plaintiff determination. *See Gluck,* 976 F.Supp. at 546 (explaining that only the typicality and adequacy requirements of Rule 23 are involved when determining the lead plaintiff). This is because the "most adequate plaintiff" presumption created by the PSLRA is rebutted where

the prospective lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

■ The typicality requirement of Rule 23(a)(3) is satisfied when the named plaintiffs have (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct, and (3) their claims are based on the same legal issues. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D.Cal.1996). There is a well-defined community of interests in this case which renders the claims of each class member typical of the claims asserted by other members of the purported class. The common questions of law and fact include: (1) whether the defendants violated the federal securities laws by misrepresenting or omitting material facts during the class period, (2) whether the individually-named defendants caused Network Associates to issue false and misleading statements during the Class Period, (3) whether the defendants acted knowingly or with deliberate recklessness, (4) whether the market price of Network Associates securities was artificially inflated during the Class Period, and (5) whether, and to what extent, the class members have sustained damages. Since the claims of each purported class member in this case arise from the same event or course of conduct giving rise to the claims of the other class members, Louisiana Teachers satisfies the typicality requirement of Rule 23.

■ Louisiana Teachers has also shown itself to be an adequate representative pursuant to Rule 23(a)(4). This determination focuses around two questions: (1) do the interests of the class representative coincide with those of the class, and (2) does the representative have the ability to prosecute the action vigorously through the services of competent counsel. *See In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D.Cal.1986). With regard to the first question, adequacy requires the absence of antagonistic interests between class representatives and absent class members. Here, since the issues surrounding the defendants' alleged wrongdoing are virtually identical for each and every class member, the interests of Louisiana Teachers are suitably aligned with the interests of the class as a whole.

Turning to the second prong of the adequacy analysis, the Court must consider Louisiana Teachers' willingness and ability to assume the duties of lead plaintiff, including the crucial duties of choosing adequate counsel at a negotiated fee and monitoring that counsel's conduct throughout the litigation. The declarations submitted by Reeves state that Louisiana Teachers understands its fiduciary obligations to other class members and that it is willing to perform those duties. In particular, Louisiana Teachers expresses its commitment to remain informed as to all aspects of the litigation, consult with counsel regarding major litigation decisions, and direct counsel's actions with respect to such decisions. Louisiana Teachers' ability and intention to vigorously prosecute this case is also demonstrated by its selection of Bernstein Litowitz as its counsel. The firm resume of Bernstein Litowitz reveals its competence to provide class representation in a securities class action. Indeed, the firm has achieved several successful outcomes in similar lawsuits. Furthermore, the process by which Louisiana Teachers selected Bernstein Litowitz displays the former's eligibility to serve as lead plaintiff. Reeves explains that soon after the 1995 passage of the PSLRA, Louisiana Teachers selected Bernstein Litowitz from numerous law firm solicitations based on its track record, reputation,

and reasonable fees, thereafter developed a long-term relationship with Bernstein Litowitz, and choose Bernstein Litowitz to represent Louisiana Teachers in this case after discussing the specific issues of the case with members of the Bernstein Litowitz firm. Moreover, Louisiana Teachers has negotiated a fee arrangement with Bernstein Litowitz that, it claims, will result in compensation that is significantly less than the fee percentage that is typically awarded in similar cases. The fee agreement negotiated between Louisiana Teachers and Bernstein Litowitz was submitted to the Court for *in camera* review. Having examined that agreement, the Court finds that the contemplated fee percentages, which vary depending on the stage of the litigation when recovery is obtained and the amount of any recovery, reflect reasonable and appropriate compensation amounts. For purposes of the PSLRA's lead plaintiff presumption, the above factors sufficiently demonstrate Louisiana Teachers' adequacy under Rule 23(a)(4).

For the foregoing reasons, Louisiana Teachers is presumptively qualified to serve as lead plaintiff in this case. Nevertheless, under the PSLRA, this presumption may be rebutted. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (presumption rebuttable through "proof … that the presumptively most adequate plaintiff … will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."). The other two proposed lead plaintiffs in this case—the Bakers Pension Funds and Morales—attempt to do just that.

■ First, the Bakers Pension Funds argue that Louisiana Teachers' presumed adequacy to serve as lead plaintiff is rebutted because its financial loss, when examined in the context of other facts, does not represent the largest financial interest in

this case. According to the Bakers Pension Funds, although Louisiana Teachers' amount of financial loss may be the highest, it is (a) not significant relative to the total likely damages to the class and (b) is no greater than the Bakers Pensions Funds' loss when considered as a percentage of each fund's total assets—Louisiana Teachers claims losses of approximately $1 million, which amounts to 0.01% of its $10 billion in total assets, while the Bakers Pension Funds claim losses of approximately $90,000, which amounts to 0.09% of their $100 million in total assets. Neither of these facts, however, is relevant to the presumption called for in the PSLRA. The second part of the presumption looks only to the monetary amount of loss suffered by the prospective lead plaintiff to determine if their "financial interest in the relief sought by the class" is the largest. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). If a prospective lead plaintiff shows it suffered the largest financial loss, that class member has sufficiently satisfied the second requirement of the lead plaintiff presumption, regardless of how that amount compares with the total damages in the case or the prospective lead plaintiff's total assets.

■ Second, the Bakers Pension Funds contend Louisiana Teachers should not be appointed lead plaintiff because its presumed adequacy to serve as lead plaintiff may be rebutted during the litigation. This argument relies on the fact that all of Louisiana Teachers' purchases of Network Associates securities were made within 15 days of the end of the Class Period. According to the Bakers Pension Funds, Louisiana Teachers will seek to maximize its damages by employing a damages theory that assumes the fraudulent inflation of Network Associates' stock price was constant throughout the Class Period, and thus, those who purchased stock at the end of the period, like Louisiana Teachers,

suffer increased damages. Because this theory is antagonistic to the interests of other class members, the Bakers Pension Funds argue that Louisiana Teachers will have claims that are atypical of the class and that its adverse interests will render it an inadequate class representative. In addition, the Bakers Pension Funds speculate that Louisiana Teachers will be subject to unique defenses. They contend that Louisiana Teachers' conflict with the class regarding damages will enable the defendants to challenge class certification. Furthermore, they argue that the timing of Louisiana Teachers' stock purchases makes its claims susceptible to a defense based on any corrective disclosures issued by Network Associates prior to Louisiana Teachers' first purchase on December 6, 2000.

These arguments fail for several reasons. Most importantly, they are based on pure speculation. The PSLRA requires "proof" that the presumptively most adequate plaintiff will not fairly and adequately protect the class or is subject to unique defenses. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Speculative assertions such as those offered by the Bakers Pension Funds are therefore insufficient to rebut the lead plaintiff presumption in this case. *See Gluck,* 976 F.Supp. at 547–48. Furthermore, the merits of the Bakers Pension Funds' arguments are also suspect. Conflicts among class members arising from the timing of their stock purchases do not necessarily rebut the PSLRA's lead plaintiff presumption. *See Chan v. Orthologic Corp.,* 1996 WL 1082812, at *3–*4 (D.Ariz., Dec.19, 1996); *see also Blackie v. Barrack,* 524 F.2d 891, 909–10 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) ("courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit"); *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 513 (S.D.N.Y.1996) ("hypothetical conflicts regarding proof of damages are not sufficient to defeat class certification at this stage of the litigation"). Indeed, any actual conflicts "may be substantially outweighed by the class members' common interests ... in establishing the existence and materiality of misrepresentations." *Chan,* 1996 WL 1082812, at *3 (citing *Blackie,* 524 F.2d at 909–10). For instance, where the alleged stock price inflation is attributed to causes that allegedly persisted throughout the conflicting class periods, it "will be in the interests of each class member to maximize the inflation from those causes at every point in the class period." *Id.* (citing *Blackie,* 524 F.2d at 909–10). In this case, Louisiana Teachers and the other class members have the same or similar injury, and that injury arises from a course of conduct that is common to all class members. Therefore, Louisiana Teachers' purchase of Network Associates securities late in the class period fails to rebut the appropriateness of their lead plaintiff status. In any event, "should the progression of this case reveal that the different class periods do significantly affect the nature of the parties' claims, the court is free to split the class into appropriate subclasses at that time." *Id.* at *4 (citing *Blackie,* 524 F.2d at 909).

The third attempt to rebut Louisiana Teachers' lead plaintiff eligibility is offered by Morales and is based on Louisiana Teachers' selection of counsel for this action. Morales argues that because Louisiana Teachers has failed to show that they accepted representation bids from numerous law firms and thereafter negotiated to obtain the highest quality representation at the lowest price, their adequacy to serve as lead plaintiff is rebutted. As mentioned earlier, a proposed lead plaintiff's adequacy under Rule 23 and the PSLRA's lead

plaintiff presumption is partially based upon that plaintiff's efforts to select class counsel. By demonstrating the willingness and ability to retain competent counsel at a negotiated fee that conforms with the interests of the class, a proposed lead plaintiff can confirm its position as the "most adequate plaintiff." Conversely, a proposed lead plaintiff who utterly fails to fulfill its fiduciary duties in selecting appropriate class counsel will in most cases be unable to prove that it can adequately protect the class as lead plaintiff. *See Hernandez*, at *4–5.

■ The Court recognizes that a clearly unfair fee arrangement may, in itself, rebut the lead plaintiff presumption. *See Bank One*, 96 F.Supp.2d at 784; *Raftery*, 1997 WL 529553, at *2. However, such a situation is undeniably absent in this case. As discussed above, the declarations submitted by Reeves indicate that Louisiana Teachers engaged in a careful, multi-faceted selection process before choosing Bernstein Litowitz to represent it in this action. Reeves' assertions demonstrate Louisiana Teachers' willingness and ability to perform the duties of a lead plaintiff, including the obligation to seek out competent counsel who will represent the class at a cost-effective fee. Indeed, this Court's *in camera* review of the specific fee arrangement negotiated between Louisiana Teachers and Bernstein Litowitz reveals that their agreement sets forth fair and reasonable fee percentages for Bernstein Litowitz's legal services. In light of Louisiana Teachers' counsel-selection efforts in this case and the reasonableness of its the representation arrangement with Bernstein Litowitz, the Court concludes that Louisiana Teachers' presumptive status as lead plaintiff under the PSLRA has not been rebutted. To the contrary, Louisiana Teachers' has effectively demonstrated its willingness and ability to adequately protect the interests of the class in the ensuing litigation.

## VI. Approval of Lead Plaintiff's Choice of Counsel

■ While the PSLRA gives the "most adequate plaintiff" the authority to "select and retain counsel to represent the class," it makes that selection "subject to the approval of the court." 15 U.S.C. § 78u–4(a)(3)(B)(v). This provision implicates multiple interests in the selection of counsel for securities class actions. On the one hand is the plain language of the statute which states that the lead plaintiff "shall" choose counsel. Accordingly, some level of deference to the lead plaintiff's selection is envisioned by the PSLRA. On the other hand, the fiduciary duties owed to the class under Rule 23 by both the lead plaintiff and the court require the selection of the "best" counsel for the litigation. A determination of the "best" counsel is dependent on various factors. One is the proposed counsel's experience with securities class actions. Another factor involves its resources to pursue the litigation. The fees to be paid for counsel's services are also crucial because the lower the fees, the more money available to the class from any recovery in the case. The lowest fee, however, is not necessarily the preferable fee in all cases. For example, more experienced counsel or counsel with a stellar track record in similar cases may demand a premium for their services. Also, counsel serving at a reduced fee may be inclined to settle the case at an early juncture in the case, not necessarily for the benefit of the class, but rather to limit their litigation costs.

In light of these various considerations, it is reasonable to conclude that the PSLRA does not permit a court to substitute its judgment for that of the lead plaintiff regarding the selection of counsel *so long as the representation arranged by the lead plaintiff is reasonable* and thus does not interfere with that plaintiff's presumed

adequacy to represent the entire class. Several courts have made class counsel determinations that are consistent with the above-stated interpretation of the PSLRA. Where the appointed lead plaintiff is found capable of selecting and monitoring counsel, courts have permitted that plaintiff to select class counsel and have given deference to its selection. *See, e.g., Quintus,* at 980; *Bowman,* 195 F.R.D. at 659; *Network Associates Inc.,* 76 F.Supp.2d 1017; *California Micro Devices I,* 168 F.R.D. at 275–76; *In re California Micro Devices Sec. Litig.,* 168 F.R.D. 276, 278 (N.D.Cal. 1996). This approach is typically used when an institutional investor is appointed lead plaintiff. *See, e.g., Quintus,* at 978 (reasoning that "Congress has found, and most courts would agree, that institutional investors are better equipped than individuals to serve as lead plaintiffs"); *see also id.* at 977 ("the court would be hesitant to employ competitive bidding if an institutional investor had come forward and negotiated a fee arrangement that appeared reasonable"). In contrast, where courts find that the lead plaintiff is incapable of negotiating a competitive fee arrangement, deference is not afforded to that plaintiff's choice of counsel, and, in some cases, the court itself selects class counsel through a competitive bidding process. *See, e.g., Quintus,* at 973–74, 975; *Wenderhold,* 188 F.R.D. at 587; *see also* Brief of the Securities and Exchange Commission as *Amicus Curiae* in Support of Appellants on the Issued Specified, *In re Cendant Corp. Litig.,* Nos. 00–2769, 00–3653 (3d Cir.) (decision pending), at 23 ("the Commission believes that the district court should take responsibility for [selecting and retaining lead counsel] away from the lead plaintiff only where the circumstances of the case clearly and substantially depart from the [PSLRA] model").

In this case, Louisiana Teachers, an institutional investor, has sufficiently demonstrated that it utilized an appropriate selection process to choose counsel and that the fee arrangement it negotiated with Bernstein Litowitz is reasonable. These factors not only require Louisiana Teachers' appointment as lead plaintiff, they also compel this Court's approval of Louisiana Teachers' choice of Bernstein Litowitz to serve as lead counsel. As mentioned earlier, where the presumptively most adequate plaintiff has satisfactorily negotiated a representation arrangement with counsel, the court "need not, and indeed should not, substitute its judgment for that of the lead plaintiff." *Quintus,* at 973; *see also Bowman,* 195 F.R.D. at 659. Indeed, the rejection of Louisiana Teachers' choice of counsel in this case would unjustifiably risk conflict with the express provisions of the PSLRA. *See* 15 U.S.C. § 78u–4(a)(3)(B)(v); *Steiner,* at 9–10; *Microstrategy,* 110 F.Supp.2d at 437–38.[2]

## VII. Conclusion

Louisiana Teachers is the most adequate plaintiff under the PSLRA's lead plaintiff presumption, and that presumption has not been rebutted in this case. Therefore, the Court GRANTS the Louisiana Teachers' motion to be appointed lead

---

2. The Court notes that a competitive bidding process is entirely unsuited to the facts of this case because it would result in the elevation of cost considerations over all other factors. While such an approach may be appropriate in some situations, for example, where no proposed lead plaintiff has the incentive or ability to retain competent counsel and negotiate a reasonable fee, it is ill-suited to a case, such as this one, where an institutional investor with a large amount at stake and the resources to vigorously prosecute the action comes forward as the proposed lead plaintiff. Through the terms of the PSLRA, Congress has established that such a plaintiff can adequately protect the interests of the class regardless of whether or not they select the least expensive counsel available.

plaintiff pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934 and to approve Louisiana Teachers' choice of counsel. Louisiana Teachers is hereby APPOINTED lead plaintiff in these consolidated actions, and its selection of Bernstein Litowitz to serve as lead counsel is APPROVED.

The Bakers Pension Funds' motion for appointment of lead plaintiff and approval of selection of lead counsel is DENIED.

Morales' motion to be appointed lead plaintiff or, in the alternative, for competitive bidding is DENIED.

IT IS SO ORDERED.