PLUMBERS & PIPEFITTERS LOCAL 562 PENSION FUND, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

MGIC INVESTMENT CORPORATION, et al., Defendants.

Teamsters Local 456 Annuity Fund, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

MGIC Investment Corporation, et al., Defendants.

Minneapolis Firefighters' Relief Association, Individually and on behalf of all others similarly situated, Plaintiff,

v.

MGIC Investment Corporation, et al., Defendants.

Fulton County Employees' Retirement System, Individually and on behalf of all others similarly situated, Plaintiff,

v.

MGIC Investment Corporation, et al., Defendants.

Wayne County Employees Retirement System, et al., Individually and on behalf of all others similarly situated, Plaintiffs,

v.

MGIC Investment Corporation, et al., Defendants.

Nos. 08C0458, 08C0500, 08C0614, 08C0918, 09C0275.

United States District Court, E.D. Wisconsin.

March 27, 2009.

Catherine J. Kowalewski, Darren J. Robbins, David C. Walton, Coughlin Stoia Geller Rudman & Robbins LLP, Arthur L Shingler, III, Scott & Scott LLC, San Diego, CA, Jacques C. Condon, K. Scott Wagner, Hale & Wagner SC, Andrei H. Ciobanu, Nola J. Hitchcock Cross, Cross Law Firm SC, Milwaukee, WI, Joseph E. White, III, Maya Saxena, Saxena White PA, Boca Raton, FL, Charles N. Nauen, Karen Hanson Riebel, Nathan D. Prosser, Richard A. Lockridge, Lockridge Grindal Nauen PLLP, Minneapolis, MN, David R. Scott, Scott & Scott LLC, Colchester, CT, David M. Foster, Fulbright & Jaworski LLP, Washington, DC, Harold S. Fried, Fried Saperstein Abbatt PC, Southfield, MI, for Plaintiffs.

Larry B. Brueggeman, Previant Goldberg Uelmen Gratz Miller & Brueggeman SC, Milwaukee, WI, for Fulton County Employees Retirement System/Plumbers & Pipefitters Local 562 Pension Fund, Individually and on behalf of all others similarly situated/Teamsters Local 456 Annuity Fund.

Max B. Chester, William J. Katt, Jr., Foley & Lardner LLP, Elizabeth C. Perkins, Jeffrey K. Spoerk, Valerie P. Vidal, Quarles & Brady LLP, Milwaukee, WI, Jay N. Varon, Foley & Lardner LLP, Edward J. Fuhr, Hunton & Williams, Washington, Dc, Matthew Bosher, Terence J. Rasmussen, Hunton & Williams LLP, Richmond, VA, for Defendants.

## DECISION AND ORDER

LYNN ADELMAN, District Judge.

The above-captioned cases are putative class actions pending in this District. All allege that defendant MGIC Investment Corporation ("MGIC") and certain of its officers and directors violated federal securities laws by making false and misleading statements about the company's business and financial

results between October 12, 2006 and February 12, 2008.[1] After the first two cases were filed, plaintiffs Fulton County Employees' Retirement System ("Fulton County"), Wayne County Employees' Retirement System ("Wayne County"), and Stationary Engineers Local 39 Pension Trust Fund ("Stationary Engineers") moved to consolidate the actions. Since then, two additional cases were filed in this District, and a final case was transferred to this District from the Eastern District of Michigan. The transferred case, filed by Wayne County, was the first of the five cases to be filed in any court. All parties agree that all five cases involve common questions of law or fact and that consolidation under Federal Rule of Civil Procedure 42(a) is appropriate. I likewise conclude that such cases involve common questions of law and fact, and therefore the motions to consolidate will be granted.

Plaintiffs Fulton County, Wayne County, and Stationary Engineers have each filed a motion to be appointed lead plaintiff in these consolidated actions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u–4(a)(3). I consider these motions below, as well as the associated motions for appointment of lead and liaison counsel.

## I. BACKGROUND

MGIC, through its insurance subsidiary, provides private mortgage insurance to the residential home mortgage lending industry.[2] Such insurance provides lenders with protection against unpaid loan principal, delinquent interest, and various other expenses associated with default and foreclosure. Through a joint venture, Credit–Based Asset Servicing and Securitization LLC ("C–BASS"), MGIC also purchases, services and securitizes mortgage and consumer loans. C–BASS was heavily involved in so-called "subprime" and "Alt–A" lending, and MGIC insured a number of subprime and Alt–A mortgages. Plaintiffs allege that as the subprime crisis began to unfold, MGIC and its officers and directors concealed the true impact of the crisis on C–BASS and MGIC. As a result, MGIC's stock traded at artificially high prices during the relevant time period. Between mid–2007 and early–2008, however, MGIC unveiled its worsening financial condition, leading to a dramatic decrease in stock price. Plaintiffs are all institutional investors that acquired MGIC stock at allegedly inflated prices and suffered large losses once defendants' alleged fraud was revealed.

## II. PSLRA

The PSLRA was enacted to combat certain perceived abuses of securities class actions arising out of lawyer-driven lawsuits brought on behalf of "professional plaintiffs," or plaintiffs with at best nominal interest in the securities at issue. See H.R. Conf. Rep. No. 104–369, at 32–35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731–34 (hereinafter "Conference Report"); see also In re BankAmerica Corp. Sec. Lit., 263 F.3d 795, 800 (8th Cir.2001); Manual for Complex Litigation (Fourth) § 31.3, at pp. 529–30 (2004). The PSLRA thus creates a rebuttable presumption that the person having "the largest financial interest in the relief sought by the class" should be named lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii). This presumption was designed to encourage institutional investors, who are more likely to have significant financial holdings at stake as well as greater sophistication and experience in securities matters, to exercise control over the litigation and over counsel. Conference Report, supra, at 34–35; Manual for Complex Litigation (Fourth) at p. 530.

The specific provisions of the PSLRA concerning appointment of lead plaintiff are as follows. First, the PSLRA requires that within twenty days after the complaint is filed, a plaintiff must publish notice of the purported class action in a widely-circulated business publication. 15 U.S.C. § 78u–4(a)(3)(A)(i). If, as in the present case, more than one action on behalf of a class asserting substantially the same claim or claims has been filed, only the plaintiff in the first-filed action need file a notice. Id. § 78u–4(a)(3)(A)(ii). Once notice has been filed, potential lead plaintiffs have sixty days to file

---

1. As will be discussed, some potential lead plaintiffs disagree about the relevant time period.

2. Facts relating to MGIC are taken from the various complaints and are assumed to be true for purposes of the present motions.

a motion to serve as lead plaintiff of the purported class. *Id.* § 78u–4(a)(3)(A)(i)(II).

The PSLRA directs the court to name as lead plaintiff the "most adequate plaintiff," defined as the person that "the court determines to be most capable of adequately representing the interests of the class members." *Id.* § 78u–4(a)(3)(B)(i). The PSLRA further directs that the court presume that the most adequate plaintiff is the person or group of persons that (1) has either filed the complaint or made a motion in response to the published notice; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[3] *Id.* § 78u–4(a)(3)(B)(iii)(I). Once the court identifies the presumptive lead plaintiff, that person must be named lead plaintiff unless a member of the purported plaintiff class supplies proof that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *Id.* § 78u–4(a)(3)(B)(iii)(II).

## III. DISCUSSION

### A. Appointment of Lead Plaintiff

 Plaintiffs Fulton County, Wayne County, and Stationary Engineers have each filed a motion to be appointed lead plaintiff. All three movants are institutional investors that suffered large losses as a result of defendants' alleged securities fraud. There is no indication that any of them are professional plaintiffs having only nominal interests in MGIC securities. Thus, each movant appears to be the kind of lead plaintiff envisioned by the PSLRA. Nonetheless, the PSLRA requires that I identify a presumptive lead plaintiff pursuant to established criteria. 15 U.S.C. § 78u–4(a)(3)(B)(iii). All of the movants satisfy the first and third criteria—that is, they have either filed the com-

plaint or made a timely motion to serve as lead counsel, and they would satisfy the adequacy and typicality requirements of Rule 23. The only issue is to determine which of the movants "has the largest financial interest in the relief sought by the class." *Id.* § 78u–4(a)(3)(B)(iii)(I)(bb).

The PSLRA does not specify any procedures for identifying the plaintiff with the largest financial interest, other than to state that the court is to make the determination. *Id.* Courts have used a variety of methods in making this determination, *see, e.g., Manual for Complex Litigation (Fourth)* at 535–36 (citing cases), but the parties have not cited, and I have not found, any binding case law specifying a method for determining the largest financial interest. Further, although each movant calculates its financial interest under a number of the methods employed by various courts, no movant has argued that any of the cited methods is better than any of the others.[4] However, where, as in the present cases, all movants are sophisticated institutional investors that have suffered losses that would be described as large under any standard, there is no particular reason to favor one method of computation over another. As noted, the purpose of the lead plaintiff provisions of the PSLRA is to discourage lawyer-driven lawsuits filed on behalf of parties with only nominal interests in the matter, and to favor suits by institutional investors that have suffered large losses. *See* Conference Report, *supra,* at 34 ("The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.' "). Where all movants are institutional investors that have suffered large losses rather than professional plaintiffs, judicial resources are not well-spent on finely-calibrated inquiries into which plaintiff has the largest financial interest. Indeed, by not specifying a method for determining the largest financial interest

---

3. When identifying the presumptive lead plaintiff, courts usually examine only the "adequacy" and "typicality" factors under Rule 23. *See, e.g., W. Penn. Elec. Employees Pension Trust v. Plexus Corp.*, No. 07–C–582, 2007 WL 3342593, at *2 (E.D.Wis. Nov. 8, 2007).

4. To be sure, movants cite other cases in which district courts found certain methods to be superior to others, but there does not appear to be any consensus among courts as to which method is best. Movants have offered no compelling reasons of their own for preferring one method over another.

and stating instead that the determination is the court's, the PSLRA appears to discourage any such inquiry and prefer that the court make the determination based on whatever factors seem most appropriate under the facts of the case before it.

In any event, in the present case identification of the movant with the largest financial interest turns on the length of the class period, and movants focus their arguments on whether the court should calculate financial interests under a longer period (October 12, 2006 to February 12, 2008) or a shorter period (February 6, 2007 to February 12, 2008). The class period is important because if the court uses the shorter class period, Wayne County would have the largest financial interest no matter what method is used to calculate interests. However, if the court uses the longer period, Fulton County would have the largest financial interest under a few methods. If the longer period is used, Wayne County would still have the largest financial interest under several methods—the so-called "net shares method," a method used by the district court in *Topaz Realty v. Northfield Labs., Inc.*, No. 1:06–CV–01493, 2006 U.S. Dist. LEXIS 77613 (N.D. Ill. June 19, 2006), and two of the four so-called "*Lax*" factors, *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D.Ill. Aug. 11, 1997). Again, however, Wayne County makes little effort to show that any of these methods is better than the methods that give Fulton County the largest financial interest. (*See* Wayne County Aug. 8, 2008, Mem. at 13–14.) Instead, it devotes most of its briefs to arguing in favor of the shorter class period.

The movants' choice of arguments thus convinces me that the best way to calculate financial interests in this case is to use each movant's estimation of the "loss" it suffered as a result of defendants' alleged misconduct. Each movant's estimated loss could be calculated in a number of ways, but the parties appear to agree that no matter how their losses are calculated, Fulton County has the largest loss under the longer class period ($2,398,280), while Wayne County has the largest loss under the shorter period ($1,664,569). Stationary Engineers has estimated its loss under either class period as $600,038 (Stationary Eng'rs July 15, 2008, Mem. at 9), and thus no matter which period I choose, Stationary Engineers would not have the largest financial interest. Accordingly, Stationary Engineers is out of the running.[5]

I now turn to the question of proper class period. Other district courts have dealt with this question in connection with its determination of largest financial interest, and again no particular method for identifying the proper class period has emerged. *See, e.g., In re Centerline Holding Co. Sec. Lit.*, No. 08 Civ. 505, 2008 WL 1959799, at *3–4 (S.D.N.Y. May 5, 2008); *Miller v. Dyadic Int'l, Inc.*, No. 07–80948–CIV, 2008 WL 2465286, at *4 (S.D.Fla. April 18, 2008); *In re Doral Fin. Corp. Sec. Lit.*, 414 F.Supp.2d 398, 402–03 (S.D.N.Y.2006); *In re Star Gas Sec. Lit.*, No. 3:04CIV1766, 2005 WL 818617, at *7 (D.Conn. April 8, 2005); *Piven v. Sykes Enters., Inc.*, 137 F.Supp.2d 1295, 1303 (M.D.Fla.2000). However, all courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis. *Centerline*, 2008 WL 1959799, at *3–4; *Miller*, 2008 WL 2465286, at *4; *Star Gas*, 2005 WL 818617, at *7; *Piven*, 137 F.Supp.2d at 1303. This is so because the lead-plaintiff determination is made during the earliest stages of a purported class action and without the defendants' participation. Further, nothing in the lead-plaintiff provisions of the PSLRA suggests that the court should make any effort to define the class before it has selected a lead plaintiff.[6] Thus, rather than ruling on

---

5. Indeed, although Stationary Engineers filed a motion to be appointed lead plaintiff on the same day that Fulton County and Wayne County filed their motions, Stationary Engineers filed no responses to the motions filed by the other contenders. Thus, it appears that Stationary Engineers may be conceding that it does not have the largest financial interest.

6. Wayne County argues that the class period identified in the first notice to be published pursuant to the PSLRA's notice provisions should control. However, nothing in the PSLRA limits the class period to the period identified in the first notice. To the contrary, the PSLRA seeks to discourage the "race to the courthouse," and its notice provisions are part of the reforms designed to remove advantages gained by litigants who file the first lawsuit. *See* Conference Re-

the proper class period, courts usually (but not always, *see Centerline,* 2008 WL 1959799, at *3–4 [7]) use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period. *Miller,* 2008 WL 2465286, at *4; *Doral,* 414 F.Supp.2d at 402–03. This approach seems to be based on the assumption that "the class," as referenced in § 78u–4(a)(3)(B)(iii)(I)(bb), should be defined as the broadest, most inclusive potential class. *See, e.g., Miller,* 2008 WL 2465286, at *4. Such an assumption makes some sense, because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record.

Of course, simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination, but courts have ways of deterring this conduct, such as imposing sanctions if after further litigation the court learns that the allegations were made in bad faith. *See, e.g., Lax,* 1997 WL 461036, at *5. For purposes of selecting the lead plaintiff at the outset of a case, however, I find that an adequate safeguard against abuse is to simply review the complaint and briefs to make sure that the allegations supporting the longer class period are not obviously frivolous. This is especially true where, as in this case, all potential lead plaintiffs are institutional investors that have suffered substantial losses, not professional plaintiffs with nominal interests, and thus the intent of the PSLRA will be fulfilled no matter who is named lead plaintiff.

In the present case, I find that the allegations supporting the longer class period are not obviously frivolous. The complaints alleging the longer class periods raise an inference that MGIC knew as early as October 12, 2006 that the subprime crisis was taking a greater toll on its business than it let on, and that even before February 6, 2007, MGIC made false statements about its loan loss reserves and inflated its revenues and earnings.[8] Therefore, defining "the class" as the purchasers of MGIC stock between October 12, 2006 and February 12, 2008, I determine that Fulton County "has the largest financial interest in the relief sought by the class." It is thus the presumptive lead plaintiff. Because no class member has attempted to rebut this presumption in accordance with § 78u–4(a)(3)(B)(iii)(II), I will appoint Fulton County lead plaintiff.

## B. Appointment of Lead and Liaison Counsel

 The PSLRA provides that the lead plaintiff shall, subject to the approval of the court, select and retain class counsel. 15 U.S.C. § 78u–4(a)(3)(B)(v). This decision is a matter within the court's discretion, and it contemplates an independent evaluation of

port, *supra,* at 33–34. Allowing the class period identified in the first-filed notice to control the selection of lead plaintiff would be inconsistent with this intent. *See also Star Gas,* 2005 WL 818617, at *7 (holding that class period identified in first-filed notice does not control lead-plaintiff determination).

**7.** The *Centerline* court, citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), examined the allegations of the complaint and determined that the allegations supporting a longer class period were not "plausible." It therefore selected a shorter, plausible class period. As explained below, I apply a similar standard, although because I am reviewing the complaint without the benefit of input from defendants, I am hesitant to apply *Twombly's* "plausibility" standard rather than a looser standard. The plausibility standard normally applies only after a defendant moves to dismiss a complaint and explains why a plaintiff's allegations are implausible. Unlike a defendant, competing potential lead plaintiffs will not want to limit the class's eventual recovery by showing at the beginning of a case that a broader class period is implausible. Indeed, in the present case, Wayne County hedges its bets and argues that although the longer period seems implausible, it reserves the right to argue for a larger class later on. (Wayne County Aug. 8, 2008, Mem. at 6 n. 7.) This somewhat superficial argument provides me with a poor record for making an informed finding concerning plausibility.

**8.** I again emphasize that I reach this conclusion without any input from defendants and with only limited argument by the competing movants. Thus, the only conclusion that is law of the case is my conclusion that the allegations supporting the longer class period are not obviously frivolous. I do not conclude that the allegations are adequate for any other purpose, and do not mean to imply that they will survive a motion to dismiss.

the effectiveness of the proposed counsel. *In re Milestone Scientific Sec. Lit.*, 187 F.R.D. 165, 175–76 (D.N.J.1999). In this case, Fulton County has selected the firm of Scott + Scott LLP to act as lead counsel, with Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, s.c. as local liaison counsel. Scott + Scott is a reputable firm that specializes in complex litigation, including shareholder and securities class actions. It appears to have the expertise, resources and experience needed to adequately represent the plaintiffs in this case. Additionally, proposed liaison counsel Previant, Goldberg, Uelman, Gratz, Miller & Bruggeman, s.c., is a local law firm with experience practicing before this court, and thus appears well situated to serve in the role of liaison counsel, assisting with the administrative aspects of this action. Thus, I will grant Fulton County's motion to appoint lead and liaison counsel.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the parties' motions to consolidate are **GRANTED.** Case Nos. 08–C–0458, 08–C–0500, 08–C–0614, 08–C–0918, and 09–C–0275 are hereby consolidated for all purposes under Case No. 08–C–0458. The clerk of court is directed to take all appropriate steps to effect the transfer and consolidation of these cases. Pursuant to Civil L.R. 42.1(b), all subsequent filings shall be docketed in Case No. 08–C–0458.

**IT IS FURTHER ORDERED** that Fulton County's *motion to be appointed lead plaintiff* is **GRANTED,** and that Scott + Scott LLP is hereby designated plaintiffs' lead counsel, and Previant, Goldberg, Uelman, Gratz, Miller & Bruggeman, s.c., is hereby designated plaintiffs' liaison counsel.

**IT IS FURTHER ORDERED** that the motions of Wayne County and Stationary Engineers to be appointed lead plaintiff and their related motions regarding appointment of lead and liaison counsel are **DENIED.**

**FINALLY, IT IS ORDERED** that the court will hold an initial pretrial conference in this matter on **May 15, 2009, at 1:30 p.m.** in Room 390 of the United States Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. The parties should note Fed.R.Civ.P. 26(f), which requires that they confer with each other at least 21 days before the conference and file a written report of their proposed discovery plan within 14 days after their Rule 26(f) conference. In addition to conferring about the usual topics, the plaintiffs shall attempt to agree on a proposed order governing the functions of lead and liaison counsel. Further, the parties shall discuss potential provisions of a case-management plan and scheduling order. *See Manual for Complex Litigation (Fourth)* §§ 11.21 & 31.4. Finally, the report shall advise the court on any other matters that must be addressed in order to ensure the just, speedy and inexpensive determination of this complex litigation.